717 S.E.2d 219 (2011)
311 Ga. App. 269
JNJ FOUNDATION SPECIALISTS, INC.
v.
D.R. HORTON, INC.
Columbia National Insurance Company
v.
Hall et al.
Brent Scarbrough & Company, Inc. et al.
v.
D.R. Horton, Inc. et al.
D.R. Horton, Inc.
v.
Brent Scarbrough & Company, Inc. et al.
Nos. A11A0542, A11A0543, A11A0544, A11A0545.
Court of Appeals of Georgia.
July 28, 2011.
*221 Temple, Strickland, Dinges & Schwartz, Jason Bryan Schwartz, Decatur, Hicks, Casey & Foster, Richard Crawford Foster, Marietta, Andrea A. Guariglia, Penna & Mendicino, Christopher E. Penna, Conyers, for appellants.
Hobgood & Rutherford, Thomas Tucker Hobgood, David Arthur Rutherford, Atlanta, Julia Nicole Haesemeyer, Mark E. Layng, Lynn D. Betz, for appellees.
PHIPPS, Presiding Judge.
These appeals are from the trial court's rulings on summary judgment in an action for personal injuries arising out of an automobile collision. D.R. Horton, Inc. was a subdivision developer. In December 2006, Gary Hall was driving on Pleasant Hill Road near the front of the subdivision when he saw construction barrels in the middle of his travel *222 lane. Hall brought his vehicle to a stop and waited to change lanes. As he waited, his vehicle was rear-ended by another vehicle. After his vehicle was struck, he noticed a cement truck in the roadway, beyond the subdivision entrance, apparently being used in the construction of a sidewalk.
Hall filed an action against the driver of the second vehicle, against D.R. Horton, and against John Doe, alleging inter alia that D.R. Horton was negligent in entrusting operation of the construction site to John Doe, in failing to properly train and supervise John Doe when D.R. Horton knew or should have known that the failure to adequately mark the lane closure created a hazard, in failing to properly place warning signs, and in failing to take other steps to reduce the hazard and danger to others on the roadway. D.R. Horton answered the complaint and filed a third-party complaint against several contractors and their insurance carriers, including JNJ Foundation Specialists, Inc. and its insurance carrier Columbia National Insurance Company, and Brent Scarbrough & Company, Inc. and its insurance carrier Westfield Insurance Company. D.R. Horton moved for summary judgment as to each of these third-party defendants, and they filed cross-motions for summary judgment. These appeals are from the court's order granting D.R. Horton's motion for summary judgment as to JNJ and denying the remaining motions for summary judgment. We affirm the judgment in Case Nos. A11A0542, A11A0543 and A11A0544. We reverse the judgment in Case No. A11A0545.
Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law.[1] When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.[2]

Case No. A11A0542
1. JNJ contracted with D.R. Horton to pour entry sidewalks for the subdivision. In its third-party complaint, D.R. Horton alleged that JNJ was liable for refusing to provide a defense and indemnification for JNJ's negligent conduct, when the parties' construction contract required JNJ to do so. The court granted D.R. Horton's motion for summary judgment and denied JNJ's motion for summary judgment, finding that JNJ was liable for failing to provide a defense and indemnification. JNJ asserts that these findings were made in error.
JNJ contends that the trial court erred in holding that it was required to defend and indemnify D.R. Horton because: (a) there was no evidence that JNJ placed the construction barrels in the roadway; (b) there was no evidence that the barrel placement was the direct and proximate cause of Hall's injury; (c) the complaint did not allege facts that came within the scope of JNJ's work; (d) JNJ offered a defense and indemnification, which D.R. Horton rejected; and (e) JNJ had no duty to indemnify D.R. Horton because the latter was not legally obligated to pay Hall. The arguments are without merit.
The construction contract between D.R. Horton and JNJ required JNJ to carry commercial general liability insurance, and provided that JNJ had a duty to defend and indemnify D.R. Horton for any claims "in any way occurring, incident to, arising out of, or in connection with ... the work performed or to be performed by contractor or contractor's personnel, agents, suppliers, or permitted subcontractors." Under Georgia law pertaining to indemnity provisions, "`arising out of' [means] `had its origins in,' `grew out of,' or `flowed from.'"[3] Importantly, "the term `arising out of' does not mean proximate cause in the strict legal sense, nor [does it] require a finding that the injury was directly and proximately caused by the insured's actions. Almost any causal connection or relationship will do."[4]
*223 (a) There was evidence that JNJ placed the construction barrels in the roadway. Specifically, there was evidence that, on the date of the collision, JNJ poured a sidewalk at the subdivision, along Pleasant Hill Road; that the sidewalk was being poured at the time the traffic lane on Pleasant Hill Road was blocked; that JNJ's supplier delivered concrete to the entrance of the subdivision so that JNJ could construct sidewalks; that a JNJ employee who was working with the sidewalk contractors told a Brent Scarbrough employee that she needed him to close a lane for concrete that was on the way;[5] that the Brent Scarbrough employee replied that he could not close a lane without a permit and that it would take days to obtain one, to which the JNJ employee replied that she had concrete "on the way"; that the JNJ employee asked if she could use Brent Scarbrough's barrels to close the lane, but was told she could not; and that when the collision occurred, construction barrels were in the roadway, as was a cement truck that appeared to be pouring sidewalks.
In his complaint, Hall alleged that D.R. Horton and an unknown defendant created a hazard in closing the lane without proper signage or warnings. Hall's claim arose out of or was connected in some way to JNJ's work.[6] Thus, the trial court properly denied JNJ's motion for summary judgment and granted D.R. Horton's motion for summary judgment on the indemnification issue.
As for the duty to defend, an insurer can refuse to defend only when the allegations "unambiguously exclude coverage under the policy."[7]
If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. Indeed, to excuse the duty to defend the petition must unambiguously exclude coverage under the policy, and thus, the duty to defend exists if the claim potentially comes within the policy. Where the claim is one of potential coverage, doubt as to liability and [the] insurer's duty to defend should be resolved in favor of the insured.[8]
Given the nature of the allegations in Hall's complaint, the trial court properly denied JNJ's motion for summary judgment and granted D.R. Horton's motion for summary judgment regarding the duty to defend.
(b) JNJ contends there was no duty to defend or indemnify because there was no evidence of direct and proximate causation; it posits that the collision would have occurred notwithstanding the alleged acts of negligence, given the second driver's admission that she had been following Hall's vehicle too closely.
However, D.R. Horton's claim against JNJ was based on breach of contract, not negligence. And as noted in Division 1, the duty to defend and indemnify provision of the contract applied to claims arising out of or connected with JNJ's work, and the term "arising out of" does not mean proximate cause or require a finding that the injury was directly and proximately caused by the insured's actions.[9] There was no error.
(c) JNJ contends that the allegations set out in Hall's complaint did not come within the scope of JNJ's work as defined by the construction contract. Specifically, JNJ contends that the defense and indemnification provision relied upon by D.R. Horton covered work performed or to be performed by the contractor, and that another contract provision stated that the work to be performed was the labor necessary to complete the construction-related activities "generally described in Exhibit A," but that Exhibit A was blank. JNJ argues that its work was limited to pouring entry sidewalks, that it had no obligation or duty regarding lane *224 closures, and that the defense and indemnity provision therefore did not apply.
The defense and indemnity provision of the contractor agreement required only that a claim arose from or was connected with the work of JNJ or, among others, its suppliers. The allegations that the collision arose from or was connected to the construction activities that the facts show JNJ was performing were sufficient to invoke the provision.[10]
(d) JNJ contends that it was entitled to summary judgment because it (through its insurer, Columbia National) tendered a defense and indemnification to D.R. Horton, but the latter rejected it.
The purported offer to defend was conditioned upon Columbia National providing "a defense in this case solely for any acts committed by JNJ Foundations, Inc." But the parties' construction contract provided, in pertinent part, that JNJ would defend and indemnify D.R. Horton for losses in any way occurring, incident to, arising from, or in connection with the work performed by JNJ or its agents, suppliers, or permitted subcontractors. When the terms of a written contract are clear and unambiguous the court is to look to the contract alone to find the parties' intent.[11] In this case, it is clear that the parties intended that a defense be provided not "solely for acts committed by" JNJ. D.R. Horton was not required to accept less than what the contract required, and the trial court did not err in so finding.
(e) JNJ contends that D.R. Horton's indemnity claim fails because the latter voluntarily settled the underlying action with Hall. However, "under OCGA § 51-12-32, the right of indemnity shall not be lost or prejudiced by compromise and settlement."[12] JNJ's reliance on Emergency Professionals of Atlanta v. Watson[13] is misplaced, as that case is factually distinguishable.[14] The court did not err in denying JNJ's motion for summary judgment and granting D.R. Horton's motion for summary judgment on this issue.

Case No. A11A0543
2. Columbia National appeals from the court's denial of its motion for summary judgment. Columbia National contends it had no duty to defend or indemnify D.R. Horton because D.R. Horton failed to comply with the notice and service provisions of its insurance policy with Columbia National, on which D.R. Horton was an additional insured. That policy pertinently provided the following duties of the insured in the event of an occurrence, offense, claim or suit:
a. You must see to it that we are notified as soon as practicable of an "occurrence"... which may result in a claim....
b. If a claim is made or "suit" is brought against any insured, you must:
...
(2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
c. You and any other involved insured must:
(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit."
It further provided, "No person ... has a right under this Coverage Part ... [t]o sue us on this Coverage Part unless all of its terms have been fully complied with."
In April 2008, Hall's attorney sent D.R. Horton's in-house counsel two letters stating that Hall had been involved in an automobile collision located at "Pleasant Hill Rd. near Mary St." on December 15, 2006. In the letters, Hall's counsel sought the identity of the entity or entities performing construction work at the location indicated. The letters *225 did not indicate that any claims were being made against D.R. Horton or its contractors, although a police report purportedly attached thereto referenced construction on Pleasant Hill Road, and noted that the lane closure was not properly marked. D.R. Horton's inhouse counsel did not recall receiving the letters or discussing the matter with Hall's attorney.
D.R. Horton was served with Hall's complaint in November 2008. It answered the complaint in December 2008 and filed a third-party complaint against the contractors and their insurance carriers in January 2009. D.R. Horton filed its first amended third-party complaint, naming as a defendant Columbia National, in February 2009. Hall's complaint was attached to the first amended third-party complaint and referenced therein. Columbia National was served with the first amended third-party complaint in February 2009, which it answered in March 2009.
(a) Columbia National contends that it received no notice of Hall's claim until February 2009, and that D.R. Horton's ten-month delay (from April 2008 to February 2009) was unreasonable. Columbia National argues that because D.R. Horton failed to notify it of the occurrence "as soon as practicable," it had no duty to defend or indemnify D.R. Horton.
The April 2008 letters did not indicate that there was an occurrence that may result in a claim against D.R. Horton. An insured is not required to foresee every possible claim, no matter how remote, that could have arisen from an accident.[15] Rather, the insured is only required to act reasonably under the circumstances.[16]
In general, the question of whether an insured gave notice of an event or occurrence "as soon as practicable," as required by a policy of insurance, is a question for the factfinder. And an insured often may be able to present evidence of excuse or justification for the delay. Whether the excuse or justification was sufficient and whether the insured acted diligently in giving the notice are generally questions of fact, to be determined by the jury, according to the nature and circumstances of each individual case. But even so, we have also held that under all of the facts and circumstances of a particular case it may be found that an insured's delay in giving notice of an accident to [its] insurer was unjustified and unreasonable as a matter of law.[17]
D.R. Horton was not directly involved in the automobile collision, and there is no indication in the letters that its contractors were involved. It cannot be said, as a matter of law, that it was unreasonable for D.R. Horton to fail to foresee that it might be named in a lawsuit arising from the collision, and that its delay in giving notice of the collision was unreasonable.[18] Moreover, we note that "[t]he words `as soon as practicable' are relative, and must be measured by all the circumstances. Lapse of time alone, even approximately eleven months, does not of itself establish a non-compliance with the notice provision."[19] The court did not err in denying Columbia National's summary judgment motion on this issue.
(b) Columbia National contends that D.R. Horton breached the contract by failing to immediately forward to it copies of the lawsuit.
D.R. Horton received Hall's complaint in November 2008 and attached it to and referenced it in the first amended third-party complaint filed against Columbia National in February 2009. Columbia National's named insured, JNJ, was not named in Hall's complaint. Counsel for D.R. Horton began investigating the claim in December 2008, but was initially given information regarding a different accident on the same street. D.R. *226 Horton later identified JNJ as one of the contractors whose work was implicated, but misnamed Columbia National (as "Columbia Insurance Agency, Inc." rather than "Columbia National Insurance Company") in the third-party complaint which it filed in January 2, 2009. The error was corrected, the first amended third-party complaint was filed, and Columbia National was served in February 2009.
Although Columbia National is not required to show prejudice resulting from an alleged failure to forward suit papers timely,[20] the insurer's failure to demonstrate prejudice may be considered.[21] Columbia National has not demonstrated prejudice. Notably, there is no contention that Columbia National did not receive notice of the Hall suit when its insured, JNJ, received notice.
D.R. Horton is entitled to have a jury determine whether its conduct was reasonable under the circumstances.[22] The court did not err in finding that genuine issues of material fact existed regarding whether D.R. Horton's notice of the occurrence and service of the lawsuit was sufficient.

Case No. A11A0544
3. Westfield Insurance Company and Brent Scarbrough & Company, Inc. challenge the denial of their motion for summary judgment.
(a) Westfield Insurance contends that, because neither the allegations of the complaint nor the evidence implicates Brent Scarbrough as being responsible for Hall's injuries, D.R. Horton does not qualify as an additional insured under the insurance policy issued by Westfield Insurance to Brent Scarbrough.
D.R. Horton's construction contract with Brent Scarbrough required that the latter procure general liability insurance in which it named the former as an additional insured. The applicable Westfield Insurance policy endorsement pertinently provided that one added to the named insured's policy as an "additional insured" is an insured
only with respect to liability for [injury] caused, in whole or in part, by:
1. [Brent Scarbrough's] acts or omissions; or
2. The acts or omissions of those acting on [Brent Scarbrough's] behalf;
in the performance of [Brent Scarbrough's] ongoing operations for the additional insured.[23]
D.R. Horton's liability to Hall fell within this definition because it was premised on injuries allegedly caused in part by Brent Scarbrough's acts or omissions, or the acts or omissions of those acting on its behalf, in the performance of its ongoing operations for D.R. Horton. The allegations of Hall's complaint as to D.R. Horton and John Doe explicitly referred to traffic controllane closure and warnings. The construction contract contained a provision requiring Brent Scarbrough to furnish traffic control services, safety barriers, and temporary signage for all project personnel. The allegation of the complaint that John Doe was negligent in failing to properly train and supervise individuals at the construction site and should have known that the failure to adequately mark the lane closure or take other steps to reduce the hazard implicated Brent Scarbrough. And the allegations that D.R. Horton was negligent in entrusting operation of the site to John Doe and in failing to properly train and supervise John Doe at the site indicate that D.R. Horton's liability was derivative of John Doe's liability. The trial court did not err in denying Westfield Insurance's motion for summary judgment on the *227 issue of D.R. Horton's status as an additional insured.[24]
(b) Westfield Insurance argues that D.R. Horton failed to give it timely notice of the occurrence as required by the policy. The Westfield Insurance policy provides, in pertinent part, that the insured must notify Westfield Insurance "as soon as practicable of an `occurrence' or an offense which may result in a claim." And if a claim is made or suit is brought against an insured, the insured must notify Westfield Insurance "as soon as practicable." Further, the insured must "[i]mmediately send [Westfield Insurance] copies of any demands, notices, summonses or legal papers received in connection with the claim or `suit.'" Moreover, no insured has the right "[t]o sue [Westfield Insurance] on this Coverage Part unless all of its terms have been fully complied with."
Westfield Insurance contends that D.R. Horton had notice of Hall's possible claim in April 2008, when Hall's attorney sent the letters to D.R. Horton, but failed to directly notify Westfield Insurance of its claim for coverage prior to filing the first amended third-party complaint, and that such a delay cannot be justified. Therefore, Westfield Insurance argues, D.R. Horton was not entitled to coverage.
The record shows that Brent Scarbrough and/or Westfield Insurance received a letter from D.R. Horton in late December 2008, stating that Brent Scarbrough might be named in a lawsuit; Westfield Insurance states that it responded to that notice in December 2008. As discussed in Division 2(a), supra, the April 2008 letters did not inform D.R. Horton of an occurrence that may result in a claim against it; and the words "as soon as practicable" are relative, and must be measured by all the circumstances.[25] D.R. Horton was not required to foresee every possible claim that might arise from the vehicle collision and give notice of it to an insurance carrier (here, a contractor's insurance carrier).[26] Instead, the law requires an insured to act only reasonably under the circumstances.[27] In most cases, the reasonableness of a failure to give notice is a question for the finder of fact.[28] "[I]t is the nature and circumstances of the accident or the incident and the immediate conclusions an ordinarily prudent and reasonable person would draw therefrom that determine whether an insured has reasonably justified his decision not to notify the insurer."[29] And, Westfield Insurance was sent notice of the lawsuit less than one month after it was served upon D.R. Horton. Under the circumstances, we cannot say as a matter of law that any delay was unjustified and unreasonable.[30] The trial court properly denied Westfield Insurance's summary judgment motion on the issue of timeliness.
(c) Brent Scarbrough contends that the trial court erred in denying its motion for summary judgment on D.R. Horton's contractual indemnity claim because there was no evidence that Brent Scarbrough's employees were responsible for the lane closure.
The contract between Brent Scarbrough and D.R. Horton provided, in pertinent part, that Brent Scarbrough would indemnify D.R. Horton for any claim
arising out of or resulting from the performance of [Brent Scarbrough's] Work provided that ... any such claim ... is attributable to bodily injury ... or to injury to ... property, ... to the extent caused or alleged to be caused in whole or in part by any negligent act or omission, or the breach of this Agreement by [Brent Scarbrough], or anyone directly or indirectly employed by [Brent Scarbrough] or anyone for whose acts [Brent Scarbrough] may be liable, regardless of whether it is *228 caused in part by a party indemnified hereunder.... This indemnification shall not be limited in any way.
By its own terms, the indemnity clause was triggered by an allegation that Hall's injuries were caused in whole or in part by Brent Scarbrough's negligence.[31] While Hall's complaint failed to specifically identify the entities involved in the construction work, the record shows that Brent Scarbrough's contract with D.R. Horton included responsibility for "traffic control" and "safety barriers" and "temporary signage" for the use of "all project personnel"; and there is evidence that Brent Scarbrough's construction barrels had been moved that day. Giving the unambiguous terms of the contract their plain meaning,[32] including the provision that indemnity was not to be limited in any way, Brent Scarbrough was not entitled to summary judgment on this issue.

Case No. A11A0545
4. D.R. Horton contends that the trial court erred in denying its motion for summary judgment on its claim that Brent Scarbrough breached the indemnification agreement.
The scope of a written indemnification contract is a question of law for the court, which must strictly construe the contract against the indemnitee. If the language of a contract is clear and unambiguous, we will enforce its terms as written.[33]
As shown in Division 3(c), above, the construction contract between Brent Scarbrough and D.R. Horton provided, in pertinent part, that Brent Scarbrough would indemnify D.R. Horton for any claim
arising out of or resulting from the performance of [Brent Scarbrough's] Work provided that ... any such claim ... is attributable to bodily injury ... or to injury to ... property, ... to the extent caused or alleged to be caused in whole or in part by any negligent act or omission, or the breach of this Agreement by [Brent Scarbrough], or anyone directly or indirectly employed by [Brent Scarbrough] or anyone for whose acts [Brent Scarbrough] may be liable, regardless of whether it is caused in part by a party indemnified hereunder.... This indemnification shall not be limited in any way.[34]
The terms of the indemnity provision in the construction contract between D.R. Horton and Brent Scarbrough are clear. They require Brent Scarbrough to indemnify D.R. Horton for any claim arising out of Brent Scarbrough's work, to the extent the injury is alleged to be caused in whole or in part by Brent Scarbrough's negligence or breach of the agreement; and the terms do not limit indemnification in any way. And, as indicated above, the phrase "arising out of" in an indemnity clause means "had its origins in" or "grew out of" and "encompasses "almost any causal connection or relationship."[35]
Hall's complaint alleged deficiencies in traffic control during construction along Pleasant Hill Road: the John Doe contractor "knew, or should have known, that the failure to adequately mark the lane closure created a hazard to Plaintiff and as well as failing to properly [set] out warning signs at the construction site and in failing to take any other positive steps to reduce the hazard and danger to others such as Plaintiff on the roadway." The complaint also alleged, inter alia, that D.R. Horton was negligent in entrusting the site to John Doe and failing to properly supervise or train John Doe.
That Hall failed to specifically name Brent Scarbrough is immaterial, as he expressly alleged the negligence of a John Doe contractor regarding traffic control and lane closure as contributing to the cause of the accident; and D.R. Horton alleged and pointed to evidence that Brent Scarbrough, which was performing *229 excavation work on the project that day, had contractual responsibility to furnish traffic control services, safety barriers, and temporary signage for all project personnel. The allegations came within the indemnity provision.[36] Therefore, the trial court erred in denying D.R. Horton's motion for summary judgment on the indemnification claim.
Judgments affirmed in Case Nos. A11A0542, A11A0543 and A11A0544. Judgment reversed in Case No. A11A0545.
McFADDEN, J., concurs.
ANDREWS, J., concurs in the judgment only.
NOTES
[1] Ford v. Bank of America Corp., 277 Ga.App. 708, 627 S.E.2d 376 (2006).
[2] Field v. Lowery, 300 Ga.App. 812, 686 S.E.2d 422 (2009).
[3] BBL-McCarthy, LLC v. Baldwin Paving Co., 285 Ga.App. 494, 498, 646 S.E.2d 682 (2007) (citation and footnote omitted).
[4] Id. (punctuation omitted).
[5] Brent Scarbrough was another contractor involved in constructing the subdivision.
[6] See BBL-McCarthy, supra.
[7] Penm-America Ins. Co. v. Disabled American Veterans, 268 Ga. 564, 565-566, 490 S.E.2d 374 (1997).
[8] BBL-McCarthy, supra at 497-498 (1)(a), 646 S.E.2d 682.
[9] Id. at 498(1)(a), 646 S.E.2d 682.
[10] See generally id.
[11] Ins. Co. of Pa. v. APAC-Southeast, 297 Ga. App. 553, 557, 677 S.E.2d 734 (2009).
[12] Auto-Owners Ins. Co. v. Anderson, 252 Ga. App. 361, 364(2), 556 S.E.2d 465 (2001) (punctuation omitted); see OCGA § 51-12-32(c).
[13] 288 Ga.App. 473, 654 S.E.2d 434 (2007).
[14] Id. at 476(2), 654 S.E.2d 434 (indemnitee's own conduct in allowing case to go into default caused indemnitee's loss, and such a loss was not covered by language of indemnification provision).
[15] Guaranty Nat. Ins. Co. v. Brock, 222 Ga.App. 294, 295(1), 474 S.E.2d 46 (1996).
[16] Id.
[17] Plantation Pipeline Co. v. Royal Indem. Co., 245 Ga.App. 23, 25(1), 537 S.E.2d 165 (2000) (citations and punctuation omitted).
[18] See id.
[19] Gibson v. Dempsey, 167 Ga.App. 23, 25, 306 S.E.2d 32 (1983) (citation and punctuation omitted).
[20] Southeastern Express Systems v. Southern Guaranty Ins. Co., 224 Ga.App. 697, 701, 482 S.E.2d 433 (1997).
[21] Grange Mut. Cas. Co. v. Snipes, 298 Ga.App. 405, 407(1), 680 S.E.2d 438 (2009); BBL-McCarthy, supra at 499(1)(b), 646 S.E.2d 682.
[22] Southern Guaranty Ins. Co. v. Miller, 183 Ga. App. 261, 263, 358 S.E.2d 611 (1987) (a trial court's determination that a delay of about 14 months was "justified by the insured's conclusion that the accident was not of sufficient severity to involve the insurer").
[23] Language in a policy endorsement which Westfield Insurance cites in its brief is inapplicable here, as that endorsement applies to completed operations and Brent Scarbrough's work was ongoing at the time of the accident.
[24] See generally Ins. Co. of Pa., supra at 560, 677 S.E.2d 734.
[25] See Gibson, supra.
[26] See Forshee v. Employers Mut. Cas. Co., 309 Ga.App. 621, 623, 711 S.E.2d 28 (2011); Guaranty Nat. Ins. Co., supra at 295(1), 474 S.E.2d 46.
[27] Guaranty Nat. Ins. Co., supra.
[28] Plantation Pipeline Co., supra.
[29] See Southern Guaranty Ins. Co., supra (citation and punctuation omitted).
[30] Id.
[31] See BBL-McCarthy, supra at 500-501(2), 646 S.E.2d 682 (the phrase "arising out of" in an indemnity clause means "had its origins in" or "grew out of" and encompasses almost any causal connection or relationship).
[32] See Nat. Service Indus. v. Ga. Power Co., 294 Ga.App. 810, 812(1), n. 4, 670 S.E.2d 444 (2008).
[33] SRG Consulting v. Eagle Hosp. Physicians, 282 Ga.App. 842, 844, 640 S.E.2d 306 (2006) (punctuation and footnote omitted).
[34] (Emphasis supplied.)
[35] BBL-McCarthy, supra (citation omitted).
[36] See id. ("the claims at issue here clearly arose out of the subcontractors' work on [the] project regardless of any specific division of fault between them and BBL").