[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14637
_____

D.C. Docket No. 1:09-cv-02364-JEC

HDI-GERLING AMERICA INSURANCE COMPANY,
successor in interest to Gerling America Insurance Company,

Plaintiff - Counter - Defendant -
Appellee,

versus

MORRISON HOMES, INC.,

Defendant - Counter - Claimant,

TAYLOR MORRISON SERVICES, INC.,
f.k.a Morrison Homes, Inc.,

Defendant - Counter -
Claimant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 19, 2012)

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

CERITIFICATION FROM THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA

PURSUANT TO O.C.G.A. § 15-2-9.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE

JUSTICES:

This diversity action asks whether the property damage alleged in a

California class action lawsuit brought by purchasers of homes built by Taylor

Morrison Services, Incorporated ("Morrison") was caused by an "occurrence" and

therefore covered under the terms of Morrison's CGL policy (the "Policy") with

HDI-Gerling America Insurance Company ("Gerling").[1]

Central to the case are questions of Georgia law, among them whether

property damage can constitute an "occurrence" under a CGL policy where its

effects are not felt on "other property."  As this question is determinative of the

case, and the single Supreme Court of Georgia case touching upon the matter fails

squarely to answer it, we respectfully certify these questions for resolution.

---

[1]  The insurance contract was issued by Gerling's predecessor in interest, Gerling
American Insurance Company, to Morrison's predecessor in interest, Morrison Homes,
Incorporated.  We refer to Gerling and Morrison and their predecessors as Gerling and Morrison,
respectively.

2

I.

A.

Gerling issued the Policy to Morrison on November 1, 1996, for the period November 1, 1996, to November 1, 1997. The Policy required Gerling to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . caused by an 'occurrence.'" It defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[2] The Policy gave Gerling the duty to defend any such suit but contained "expected or intended injury," "contractual liability," and business risk exclusions.[3]

---

[2] The relevant text of the insuring provision reads:
> 1. Insuring Agreement
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend a "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.
> b. This insurance applies to "bodily injury" and "property damage" only if:
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>> (2) The "bodily injury" or "property damage" occurs during the policy period.

[3] The relevant portions of those exclusions read as follows:
> 2. Exclusions.
> This insurance does not apply to:
>> a. Expected or Intended Injury

3

On July 13, 2005, a group of homeowners (the "Rosa plaintiffs"), whose homes were built by Morrison and purchased during the Policy period, brought a class action against Morrison in the Superior Court of Stanislaus County, California.[4]  In an amended complaint filed on April 26, 2006, they abandoned their claims of negligence, strict liability, and nuisance and added claims of concealment, negligent misrepresentation, intentional misrepresentation, breach of express warranty, breach of implied warranty, and violations of California

---

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.
b.  Contractual Liability
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:
(1)  Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
(2)  That the insured would have in the absence of the contract or agreement.
j.  Damage to Property
"Property damage" to:
(6)  That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."
l.  Damage to Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

[4]  The class described in the Rosa plaintiffs' complaint included those who purchased homes from Morrison in the primary market and those who purchased homes in the secondary market.

4

Business and Professions Code §§ 17500 (false or misleading statements) and 17200 (unfair competition). At the center of the amended complaint was the allegation that, in constructing houses in Stanislaus County, Morrison had omitted the four inches of gravel required beneath the base of the concrete foundations by the Uniform Building Code and Stanislaus Country regulations and that, because of Morrison's failure to include the gravel layer, the houses sustained "water intrusion, cracks in the floors and driveways, and warped and buckling flooring." Record, vol. 1, no. 1, Ex. A, at 5. Plaintiffs alleged that they have "have suffered, and will continue to suffer, tangible physical property damage as a result of the excessive water-wicking, cracking of the slab[,] and breaking of the floors." Id. at 6. The amended complaint further alleged that Morrison was aware of the pertinent building codes and deliberately withheld such information from prospective buyers so as to "induce [them] to purchase and move into the Subdivision properties." Id. at 10.

On April 30, 2009, in response to the Rosa plaintiffs' motion for class certification on the claims asserted in the amended complaint, the superior court certified two classes. The first class consisted of "original homebuyers" with claims of breach of implied warranty, breach of express warranty, concealment, and violations of California Business and Professions Code §§ 17200 and 17500.

5

The second class consisted of "subsequent homebuyers" with claims of breach of express warranty, concealment, and violation of California Business and Professions Code §§ 17200 and 17500. Responding to Morrison's argument that none of the claims shared sufficient commonality to warrant class treatment for either group of homebuyers, the court in its certification order noted "that Plaintiffs' class certification motion frames three common alleged defects": the omission of the gravel layer; the use of the wrong vapor retarder; and the use of the wrong cement-to-water ratio for the slab.  Record, vol. 2, no. 17, Ex. B, at 2, 8. "[A]t trial," the court continued, "the Court may exclude evidence or otherwise limit testimony that goes beyond the scope of the core class allegations upon which this Order is based."  Id.

### B.

On August 28, 2009, after defending Morrison in the California case for some time, Gerling brought the instant action for declaratory judgment.  Gerling alleged that it was entitled to a "declaration that it has no obligation under the Gerling Policy to defend or indemnify Morrison for any claims arising in or relating to the [class-action l]itigation."  Record, vol. 1, no. 1, at 15.  The complaint focused on the so-called "Business Risk Exclusions" as well as the Expected or Intended Injury Exclusion, the Contractual Liability Exclusion, and

6

the definition of "occurrence," alleging that the court should "declare there is no coverage under the Gerling Policy for the claims in the [California litigation]."

On September 17, 2010, the District Court granted summary judgment to Gerling, holding that the class-action claims were not based on an "occurrence" as defined in the Policy because they were "exactly the type of claims that are excluded from the definition of the term 'occurrence'" and because they involved only damage to the "insured's own work." Record, vol. 4, no. 67, at 13–14. The court further found that, even if there were an "occurrence," the claims were barred by various exclusions in the Policy. That same day, the district court entered a declaratory judgment in conformance with its order. This appeal followed.

## II.

Morrison argues that the District Court erred in concluding that, under Georgia law, Gerling had no duty to defend it in the California class action; rather, Morrison argues, it should have held that the Rosa Plaintiffs' claims are based on an "occurrence" under the Policy and that no exclusion applies.

## A.

"[W]hether an insurer has a duty to defend depends on the language of the policy as compared with the allegations of the complaint." Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 418 (Ga. 2012). For an insurer to be excused under

7

Georgia law from its duty to defend an action against its insured, the allegations of the complaint must unambiguously exclude coverage under the policy. JNJ Found. Specialists, Inc. v. D.R. Horton, Inc., 717 S.E.2d 219, 223 (Ga. Ct. App. 2011). The "allegations of the complaint are looked to to determine whether a liability covered by the policy is asserted. Thus, the issue is not whether the insured is actually liable to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend." Bituminous Cas. Corp. v. N. Ins. Co. of New York, 548 S.E.2d 495, 497 (Ga. Ct. App. 2001) (citations and punctuation omitted; emphasis in original). If the complaint does not assert a claim that is covered, the insurer is justified in refusing to provide the insured a defense. Forster v. State Farm Fire & Cas. Co., 704 S.E.2d 204, 205–06 (Ga. Ct. App. 2010). Any doubt as to the insurer's duty to defend, though, should be resolved in favor of the insured. D.R. Horton, 717 S.E.2d at 223. Finally, where an insurer has a duty to defend a single claim the complaint presents, it has a duty to defend all the claims asserted.

Fundamentally, as the Supreme Court of Georgia recently held, an "occurrence" in a CGL policy is "an unexpected happening rather than one occurring through intention or design." Am. Empire Surplus Lines Ins. Co. v. Hathaway Dev. Co. (Hathaway II), 707 S.E.2d 369, 371 (Ga. 2011). However, it

8

may also—and Gerling argues it does—act as a shorthand that gestures to a collection of coverage requirements.

As Gerling argues in its brief, see Appellee's Br. 24-29; 35-38, the Georgia Court of Appeals has frequently bundled two other interrelated requirements into the definition of "occurrence." The first of these pertains to the causes of action in the underlying complaint. Some Georgia cases have treated this requirement as disaggregated from the definition of "occurrence." See McDonald Constr. Co. v. Bituminous Cas. Corp., 632 S.E.2d 420, 422–24 (Ga. Ct. App. 2006) (finding no coverage where an insured's costs arose from "a pre-existing contractual obligation"); Glens Falls, 417 S.E.2d at 200 (finding the requirement articulated in "business risk" exclusions). Others, Gerling points out, have represented it as an integral part of that definition: "Occurrence does not mean a breach of contract, fraud, or breach of warranty from the failure to disclose material information." Custom Planning & Dev., Inc. v. Am. Nat'l Fire Ins. Co., 606 S.E.2d 39, 41 (Ga. Ct. App. 2004). See Forster, 704 S.E.2d at 206 (tying the preclusion of claims for breach of contract to the definition of "accident" and "occurrence"). As the Court of Appeals wrote in a decision later affirmed by the Georgia Supreme Court: "[W]hile construction defects constituting a breach of contract are not covered by CGL policies, negligently performed faulty workmanship that damages other

9

property may constitute an 'occurrence' under a CGL policy."  Hathaway Dev. Co. v. Am. Empire Surplus Lines Ins. Co. (Hathaway I), 686 S.E.2d 855, 860 (Ga. Ct. App. 2009) (internal citations omitted).

Closely related to this is the Court of Appeals's suggestion, emphasized by Gerling, that the underlying claim involve damage to "other property."  The intermediate court has said that "there has been no occurrence within the policy where the faulty workmanship causes damage only to the work itself."  Custom Planning, 606 S.E.2d at 41.  The Court of Appeals in McDonald reasoned that this was because

> CGL coverage is intended to cover the potentially limitless liability associated with the risk that the work of the insured, once relinquished or completed, will cause bodily injury or damage to property other then to the completed work itself, and for which the insured must be found liable. For there to be coverage under a CGL policy for faulty workmanship, there would have to be damage to property other than the work itself and the insured's liability for such damage would have to arise from negligence, not breach of contract.

McDonald, 632 S.E.2d at 423 (omitting quotations).

### B.

The district court found that the Rosa plaintiffs' claims of concealment, breach of express and implied warranty, and false advertising and fraudulent business practices "are exactly the type of claims that are excluded from the

definition of the term 'occurrence' under the Georgia court's reasoning." Record, vol. 4, no. 67, at 14 (citing Custom Planning, 270 Ga. App. at 10).

In finding that Morrison's insurance claim did not satisfy the "other property" requirement, the District Court read "other property" to mean property other than the insured's completed work. Citing Hathaway I, the court explained that "the Georgia courts have held that there is no 'occurrence' under a standard CGL where there is a claim for faulty workmanship, but the only damage is to the insured's work itself." Id. With this reading in mind, it noted that the Rosa plaintiffs, "specifically, contend that the foundations in their houses cracked, allowing water to penetrate the sub-flooring and causing leaks, staining, wet carpeting, discoloration and buckling floors, among other problems." Id. at 15. The court noted as well that the "plaintiffs do not allege that any other property was damaged besides the houses that defendant constructed." Id. Indeed, the damage detailed in the Rosa plaintiffs' amended complaint—the only document aside from the Policy to which we may look to determine coverage—comprises "progressive failure" of homes, "including bucking of floors, discoloration, and further water penetration"; slabs that have "cracks that have not yet broken through to the flooring and thus are apparent only when the flooring is removed"; and "tangible physical property damage as a result of the excessive water-wicking,

11

cracking of the slab and breaking of the floors." Record, vol. 1, no. 1, Ex. A, at 5–6. Nowhere in the amended complaint is there an allegation of any specific damage that would constitute damage to "other property."

In fact, in granting class certification, the Superior Court of Stanislaus County recognized that class certification would be inappropriate as to the Rosa plaintiffs' claims for damages due to "numerous additional defects" in their houses and thus limited the evidence they could introduce at trial to that pertaining to damage to Morrison's own work: "The Court notes that Plaintiffs' class certification motion frames three common alleged defects," the omission of a gravel layer, the use of the wrong vapor retarder, and the use of the wrong water-to-cement ratio. "[A]t trial, the Court may exclude evidence or otherwise limit testimony that goes beyond the scope of the core class allegations upon which this Order is based." Record, vol. 2, no. 17, Ex. B, at 8.

### III.

Neither of the requirements used by the District Court in reaching its holding has been "authoritatively declared" as law by the Georgia Supreme Court. Guar. Trust Co. v. York, 326 U.S. 99, 112, 65 S. Ct. 1464, 1471, 89 L. Ed. 2079 (1945). That court has made no reference to the first of the intermediate court's suggestions regarding claims of breach of contract and fraud. And, while that

12

court referenced "other property" in its recent holding in Hathaway II, it is not fully clear whether it intends injury to "other property" to be a prerequisite to the existence of an "occurrence" or, rather, simply one of a number of events that can constitute an "occurrence: "[W]e answer the question posed at the outset of this opinion . . . and hold that an occurrence can arise where faulty workmanship caused unforeseen or unexpected damage to other property." Hathaway II, 707 S.E.2d at 372 (emphasis added) (citing, for "other property" language, SawHorse, 604 S.E.2d at 544, which refers to such damage as "damage to property other than to the completed work itself").

The parties here make sharply differing arguments as to the meaning of the "other property" language. Whereas Gerling characterizes it as "damage to property other than to the completed work itself," Appellee's Br. 27 (quoting McDonald, 604 S.E.2d at 544), Morrison argues that "[t]he Hathaway II court's reference to 'other' property clearly means property other than the faulty workmanship itself," Appellant's Reply 8-9.

More fundamentally, both appellant and appellant's amicus argue that Gerling's interpretation improperly conflates the definition of an "occurrence" and the "other property" exception to the business risk exclusion. That is, they argue that Gerling's interpretation improperly folds into the definition of "occurrence"

13

the "other property" exception to the business risk exclusion.  They contend, instead, that the proper analysis is in two steps.  The first step involves determining whether there has been an "occurrence."  They note that the Georgia Supreme Court in Hathaway II has defined an "occurrence" as follows: "A deliberate act, performed negligently, is an accident [and thus an occurrence] if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly."  707 S.E.2d at 372.  They argue that, under that definition, there was an "occurrence" here.  Only subsequent to this first determination does a court, they continue, consider whether an exclusion applies.  In Hathaway II, and in many of the Georgia Court of Appeals cases cited by Gerling, the business risk exclusion did not apply because the damage was to "other property" and the "other property" exception to the business risk exclusion applied.  In the instant case, however, Morrison contends that the business risk exclusion does not apply because of a different exception, the subcontractor exception.

Appellant's amicus further argues that other States are increasingly abandoning the "other property" requirement in insurance law because that requirement, when included as part of the definition of "occurrence," renders the "your work" exclusion superfluous and the "subcontractor exception" meaningless,

14

and that the Supreme Court of Georgia is poised to abandon it as well.  Amicus Br.

19; see 11 Richard A. Lord, Williston on Contracts § 32.5 (4th ed. 2012) (An

"interpretation which gives effect to all provisions of the contract is preferred to

one which renders part of the writing superfluous, useless or inexplicable.").

There being no "clear controlling precedents in the decisions of the Supreme

Court [of Georgia]," O.C.G.A. § 15-2-9, we look to it now for resolution of the

question.

IV.

Definitive resolution of this dispute by the Supreme Court of Georgia will

add clarity and stability to a critical area of law. We hereby respectfully certify the

following questions for resolution:

1. WHETHER, FOR AN "OCCURRENCE" TO EXIST UNDER A STANDARD CGL POLICY, GEORGIA LAW REQUIRES THERE TO BE DAMAGE TO "OTHER PROPERTY," THAT IS, PROPERTY OTHER THAN THE INSURED'S COMPLETED WORK ITSELF.
2. IF THE ANSWER TO QUESTION ONE (1) IS IN THE NEGATIVE, WHETHER, FOR AN "OCCURRENCE" TO EXIST UNDER A STANDARD CGL POLICY, GEORGIA LAW REQUIRES THAT THE CLAIMS BEING DEFENDED NOT BE FOR BREACH OF CONTRACT, FRAUD, OR BREACH OF WARRANTY FROM THE FAILURE TO DISCLOSE MATERIAL INFORMATION.

We do not intend the phrasing of these questions to restrict the scope of the

court's inquiry. As we have noted previously:

15

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given, whether as a comprehensive whole or in subordinate or even contingent parts.

Swire Pac. Holdings v. Zurich Ins. Co., 284 F.3d 1228. 1234 (11th Cir. 2002) (alteration in original) (quoting Martinez v. Rodriquez, 394 F.2d 156, 159 n.6 (5th Cir. 1968)).

In order to assist the court's consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the court.

QUESTION CERTIFIED.

16