UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 11-2328

_____

IFCO SYSTEMS NORTH AMERICA, Inc., a Delaware Corporation,

Plaintiff - Appellant,

v.

AMERICAN HOME ASSURANCE COMPANY, A subsidiary of American International Group, Inc. (AIG); a New York Corporation,

Defendant – Appellee.

_____

O R D E R

_____

The Court amends its order filed January 3, 2013, as follows:

On page 3, line 3 of text – the word "Right" is replaced with the word "Rite."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-2328**

IFCO SYSTEMS NORTH AMERICA, Inc., a Delaware Corporation,

Plaintiff - Appellant,

v.

AMERICAN HOME ASSURANCE COMPANY, A subsidiary of American International Group, Inc. (AIG); a New York Corporation,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William M. Nickerson, Senior District Judge. (1:09-cv-02874-WMN)

Submitted: November 27, 2012          Decided: January 3, 2013

Before TRAXLER, Chief Judge, FLOYD, and THACKER, Circuit Judges.

Unpublished Order of Certification to the Supreme Court of Georgia. Judge Thacker directed the entry of the order with the concurrences of Chief Judge Traxler and Judge Floyd.

Joseph F. Cunningham, Joshua M. Hoffman, CUNNINGHAM & ASSOCIATES, PLC, Arlington, Virginia; Eric L. Routman, LAW OFFICES OF ERIC L. ROUTMAN, Northbrook, Illinois, for Appellant. Paul Smolinsky, JACKSON & CAMPBELL, PC, Washington, D.C., for Appellee.

Appellant IFCO Systems North America ("IFCO") challenges the district court's grant of summary judgment to Appellee American Home Assurance Company ("American Home") and the district court's subsequent denial of IFCO's motion to alter or amend judgment. Because the determinative issue in this appeal hinges on a novel question of Georgia state law, we certify the following question to the Supreme Court of Georgia:

> In a negligent hiring and supervision action against an insured-employer, does the intentional conduct of an employee of the insured constitute a covered "occurrence" where the governing insurance policy covers the employer and its employees, defines an "occurrence" as an "accident," and contains a "separation of insureds" clause providing that coverage applies "to each named insured as though it was the only named insured"?

I.

A.

IFCO provides inventory and pallet management services to retail customers. Given the nature of its business, IFCO's employees are sometimes required to enter the property of IFCO customers. This case emerges from a dispute in which an IFCO customer, Rite Aid Pharmacy of Maryland ("Rite Aid"), alleged

2

that IFCO employees stole approximately $1.6 million worth of goods from a Rite Aid warehouse.

Rite Aid first sought to recover the value of the allegedly stolen property directly from IFCO in October 2008. Soon thereafter, IFCO notified its insurer, American Home, of this claim and requested coverage. American Home denied coverage in May 2009. Rite Aid ultimately filed suit against IFCO in May 2010 ("the underlying lawsuit"). In the underlying lawsuit, Rite Aid asserted the following causes of action: (1) negligent hiring, training, supervision, and retention; (2) contract indemnification; (3) trover and conversion; (4) common law indemnification; (5) negligence; and (6) breach of contract. All of these causes of action are predicated on the alleged theft by IFCO's employees.[1]

In response, IFCO filed the present lawsuit against American Home in October 2009 seeking a declaration that American Home had a duty to defend and indemnify IFCO. In December 2010, American Home filed a motion for summary judgment, arguing that it had neither a duty to defend nor indemnify IFCO under Georgia law. American Home's primary contention was that the alleged thefts by IFCO's employees were

---

[1] IFCO and Rite Aid eventually settled the underlying lawsuit with no contribution from American Home.

3

intentional acts and, accordingly, could not constitute a covered "accident." The district court agreed, granting American Home's motion on June 23, 2011. IFCO then filed a motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e), which the district court denied on November 4, 2011. IFCO then timely filed this appeal on December 2, 2011.

B.

The insurance policy at issue here is a commercial general liability policy issued to IFCO by American Home ("the Policy"). The Policy provides, in pertinent part, that American Home must "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." J.A. 165.[2] The insurance applies to all property damage caused by an "occurrence." Id. An occurrence, in turn, is defined as "an accident, including continuous or repeated exposure to substantially the same general conditions." J.A. 177. The Policy also contains a clause under the heading "Separation of Insureds," which provides:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

> Coverage Part to the first Named Insured, this insurance applies: (a) As if each Named Insured were the only Named Insured; and (b) Separately to each insured against whom claim is made or "suit" is brought.

J.A. 175.

## C.

Georgia law governs this dispute. Under Georgia law, "whether an insurer has a duty to defend depends upon the language of the policy as compared with the allegations of the complaint." Hoover v. Maxum Indem. Co., 730 S.E.2d 413, 418 (Ga. June 18, 2012). An insurer will only be relieved of the duty to defend when the allegations of the complaint are unambiguously excluded from coverage under the applicable policy. See JNJ Found. Specialists, Inc. v. D.R. Horton, Inc., 717 S.E.2d 219, 223 (Ga. 2011). Because the existence of a duty to defend is determined on the basis of the allegations in the complaint, "the issue is not whether the insured is actually liable to the plaintiffs in the underlying action; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend." Bituminous Cas. Corp. v. N. Ins. Co. of New York, 548 S.E.2d 495, 497 (Ga. 2001) (quoting Penn-America Ins. Co. v. Disabled American Veterans, 481 S.E.2d 850, 852 (Ga. App. Ct. 1997) (emphasis in original)).

5

Further, where a complaint alleges multiple claims, an insurer's obligation to defend one claim in the complaint triggers an obligation to defend the remaining claims. See HDI-Gerling America Ins. Co. v. Morrison Homes, Inc., --- F.3d ----, 2012 WL 5834882, *3 (11th Cir. 2012) (applying Georgia law); see also City of Atlanta v. St. Paul Fire & Marine Ins. Co., 498 S.E.2d 782, 784 (Ga. App. Ct. 1998) (citing Great Am. Ins. Co. v. McKemie, 259 S.E.2d 39 (Ga. 1979)) ("[W]here the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit.") (emphasis added).

D.

In its order granting American Home's motion for summary judgment, the district court held that American Home did not have a duty to defend because the factual allegations driving the underlying lawsuit were all premised on the intentional conduct of IFCO's employees. Accordingly, the court held there was no set of facts under which the alleged conduct could constitute an "accident." See IFCO Sys. N. Am., Inc. v. Am. Home Assur. Co., 797 F. Supp. 2d 660, 668 (D. Md. 2011).

In support of this holding, the district court cited several cases from the Georgia Court of Appeals. The district court was of the view that these cases stand for the proposition

6

that an employee's intentional conduct may not constitute a covered "accident" even if the employer did not foresee or intend the employee's tortious conduct. IFCO, 797 F. Supp. 2d at 664-65 (citing O'Dell v. St. Paul Fire & Marine Ins. Co., 478 S.E.2d 418 (Ga. Ct. App. 1996) (insurer did not have a duty to defend an insured corporation against sexual harassment claims brought against the corporation based on the conduct of corporation employees); Presidential Hotel v. Canal Ins. Co., 373 S.E.2d 671 (Ga. Ct. App. 1988) (same)).[3]

Subsequently, in its order denying IFCO's motion to alter/amend judgment, the district court rejected IFCO's argument that American Empire Surplus Lines Insurance Company v. Hathaway Development Company, Inc., 707 S.E.2d 369 (Ga. 2011) ("Hathaway") stands for the proposition that intentional acts may be deemed "accidents" for purposes of determining coverage by a commercial general liability policy under Georgia law. IFCO, 797 F. Supp. 2d at 669-70. In Hathaway, a general

---

[3] In so holding, the district court distinguished Crook v. Georgia Farm Bureau Mutual Insurance., 428 S.E.2d 802 (Ga. Ct. App. 1993). There, the court held that an insurer had a duty to defend an action against insured homeowners brought by the parents of a young boy who committed suicide in the insured's home. The district court found this case inapposite because, unlike O'Dell and Presidential Hotel, "[t]here is no theory of law under which the Crook plaintiff's son's actions could be imputed to the defendant homeowner." IFCO, 797 F. Supp. 2d at 665.

7

contractor, Hathaway Development Corp. ("HDC"), sought to recover damages from a plumber for the plumber's faulty workmanship. When default judgment was entered for HDC, HDC sought to recover from the plumber's insurer.

As here, the policy at issue in Hathaway covered only property damage arising from "occurrences." Likewise, the Hathaway policy also defined "occurrences" as "accidents." In that case, the insurer argued that, because the plumber had performed the allegedly faulty work intentionally, the insured's conduct could not be deemed "accidental." The Supreme Court of Georgia rejected this argument, noting, "a deliberate act, performed negligently, is an accident if the effect is not the intended or expected result; that is, the result would have been different had the deliberate act been performed correctly." Hathaway, 707 S.E.2d at 372 (quoting Lamar Homes v. Mid-Continent Cas. Co., 242 S.W.3d 1, 16 (Tex. 2007)).

Here, the district court distinguished Hathaway, noting "the 'intentional' acts in Hathaway refer to negligent acts deliberately done, as opposed to intentional tortious acts . . . ." IFCO, 797 F. Supp. 2d. at 670. Thus, the district court concluded, "Hathaway is properly limited to the context of deliberate acts that result in faulty workmanship." Id.

8

II.

A.

It is appropriate for this court to certify a question of state law to the state's highest tribunal "when [we are] required to address a novel issue of local law which is determinative in the case before [us]." Grattan v. Bd. of Sch. Commissioners of Baltimore City, 805 F.2d 1160, 1164 (4th Cir. 1986) (citing Lehman Bros. v. Schein, 416 U.S. 386 (1974)).

Because this case is governed by Georgia law, we must look to the applicable Georgia statutes to determine how to proceed. The Supreme Court of Georgia is authorized to receive certified questions from federal courts pursuant to Code of Georgia § 15-2-9(a). That statute provides:

> The Supreme Court of this state, by rule of court, may provide that when it shall appear to the Supreme Court of the United States, to any circuit court of appeals or district court of the United States, or to the Court of Appeals or the District Court of the District of Columbia that there are involved in any proceeding before it questions of the laws of this state which are determinative of the case and there are no clear controlling precedents in the decisions of the Supreme Court of this state, such federal court may certify the questions of the laws of this state to the Supreme Court of this state for answers to the questions of state law, which certificate the Supreme Court of this state may answer by written opinion.[4]

---

[4] In accordance with this statute, Supreme Court of Georgia Rule 46 provides:

> When it shall appear to the Supreme Court of the United States, or to any District Court or Circuit

(Continued)

9

B.

Here, there is no clear controlling precedent from Georgia appellate decisions. Accordingly, certification to the Supreme Court of Georgia is proper.

First, we have found no controlling authority from the Supreme Court of Georgia on this particular question. IFCO contends Hathaway is on point. It is not. The district court properly noted that the holding in Hathaway is confined to faulty workmanship cases. See also Capital City Ins. Co., Inc. v. Forks Timber Co., Inc., No. CV 511-039, 2012 WL 3757555 (S.D. Ga. Aug. 28, 2012) ("Without some indication to the contrary—either in the text of Hathaway or from the Georgia courts—this Court reads Hathaway as limited to faulty workmanship cases."). Hathaway considered whether defective construction work deliberately performed constitutes an "accident" under a substantially similar insurance policy. This is a fundamentally different question than the one posed here, which requires a

Court of Appeals of the United States, or to any state appellate court, that there are involved in any proceeding before it questions or propositions of the laws of this State which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State, such court may certify such questions or propositions of the laws of Georgia to this Court for instructions.

10

determination of whether the intentionally tortious conduct of an insured's employees constitutes a covered "accident."

Second, none of the intermediate appellate court cases cited by the district court are directly on point. While each case involved a coverage dispute, none of the cases involved a situation where the court was asked to determine whether an employee's _intentional_ conduct can be treated as an "accident" in a subsequent _negligence_ action against the employer. See IFCO, 797 F. Supp. 2d at 664-65.

Moreover, the cases cited below are inapposite inasmuch as none of them dealt with a separation of insured's clause. This is significant as this provision may require us to approach the question of coverage solely from IFCO's perspective. Given this approach, we may conclude the thefts were "accidents" because IFCO neither intended nor reasonably could have foreseen that its employees would engage in intentionally tortious conduct.[5] See Hathaway, 707 S.E.2d at 371

---

[5] American Home contends we should not consider the separation of insureds argument because it was not raised until IFCO's Rule 59(e) motion. This is inaccurate, as IFCO raised this argument in response to American Home's motion for summary judgment. Moreover, even if IFCO had not previously made this specific argument, we could properly consider it because the issue of whether coverage exists under the Policy is properly before this court. See Kamen v. Kemper Fin. Servs., 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent (Continued)

11

("Although the policy does not define 'accident,' under Georgia law, that term means an event which takes place without one's foresight or expectation or design.") (citations omitted).

Third, even if we were to conclude that the cases cited below are on point, they reach different results. Specifically, Presidential Hotel and O'Dell both found that there was no coverage for the underlying intentional conduct while Crook reached the opposite conclusion.[6]

Accordingly, a question must be certified.

### III.

Pursuant to Code of Georgia § 15-2-9(a) and Supreme Court of Georgia Rule 46, we hereby ORDER that: (1) the question stated above be certified to the Supreme Court of Georgia for answer; (2) the Clerk of this Court forward to the Supreme Court of Georgia, under the seal of this Court, a copy of this ORDER, together with the original copies of the record before this Court to the extent requested by the Supreme Court of Georgia;

---

power to identify and apply the proper construction of governing law.")

[6] This divergence caused the Eleventh Circuit to remark, "there is some difficulty in reconciling the different approaches taken in Crook and Presidential Hotel." SCI Liquidating Corp. v. Hartford Fire Ins. Co., 181 F.3d 1210, 1216-17 (11th Cir. 1999) (applying Georgia law).

12

and (3) the Clerk of this Court fulfill any request for all or part of the record simply upon notification from the Clerk of Court of the Supreme Court of Georgia.

In certifying the above question, we note that our phrasing should not restrict the Supreme Court of Georgia's consideration of this issue. As the Eleventh Circuit recently reiterated when certifying a similar question to the Supreme Court of Georgia:

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. The latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are given, whether as a comprehensive whole or in subordinate or even contingent parts.

HDI-Gerling, 2012 WL 5834882, at *6 (quoting Swire Pac. Holdings v. Zurich Ins. Co., 284 F.3d 1228, 1234 (11th Cir. 2002)).

QUESTION CERTIFIED

13