## Richmond

### CITIZENS HOME INSURANCE COMPANY, INC. V. MABEL NELSON AND MATTIE C. TAYLOR

September 1, 1977.

Record No. 760609.

Present: All the Justices.

*Thomas A. Mickler* (*Bruce D. White,* on briefs), for plaintiff in error.

*Gwendolyn Jo M. Carlberg* for defendants in error.

I'ANSON, C.J., delivered the opinion of the Court.

Mabel Nelson and Mattie C. Taylor brought separate actions against the Citizens Home Insurance Co., Inc. (insurer) to recover the amounts claimed to be due under the accidental death provisions of two insurance policies issued by the insurer to plaintiffs' father, George Huff, the insured.

The two actions were consolidated for trial, and a jury returned verdicts of $1,000 and $3,250 for Mabel Nelson and Mattie C. Taylor, respectively. Judgments were entered on the verdicts.

Mabel Nelson was the named beneficiary under a life insurance policy in the basic amount of $1,000, which the insurer paid. The policy also provided that an additional sum of $1,000 would be paid if the death of the insured resulted from violent, external, and accidental means, and did not result from "violence intentionally inflicted by another person."

Mattie C. Taylor was the beneficiary under an accident policy of insurance which provided, among other things, that "this policy does not cover any loss of life . . . which results, directly or indirectly, . . . (2) from any violence intentionally inflicted by another person . . . ."

The undisputed evidence shows that George Huff, the insured, died on July 22, 1974 as a result of a gunshot wound to the head. The shooting occurred at approximately 2:30 a.m. in the parking lot of Phil's Carry-Out restaurant in the city of Alexandria. Fada Hylton, night manager of Phil's, testified that Huff came to the carry-out counter and purchased a cup of coffee. Shortly after Huff left the counter, she heard what she thought was the sound of firecrackers. She mentioned this to her helper in the restaurant who responded that two men were shooting at each other. She looked out the window and saw Huff and another man "standing by themselves, facing each other." The other man, whose back was to her, "had a gun pointed at George (Huff) and he was shooting it." She said she heard three shots before calling the police and two more while on the telephone.

Randy Shepard testified that he was buying a cup of coffee at Phil's when the shooting occurred. While waiting for the coffee, he heard arguing in the background. Shepard stated he heard a man say, "if you make another move (expletive deleted), I am going to shoot you." He then heard a noise like "somebody shooting a cap gun." When he turned around, he saw a man (Huff) on the ground and another man running to get in his car. Shepard said he heard four or five shots, and that he was standing approximately 20 feet from where the shooting occurred. No one else was near the two men who were one and one-half yards apart. The lighting in the area was "good."

When the Alexandria police arrived on the scene, they did not find a firearm on or near the body of the insured. The police were unable to obtain the identity of the insured's assassin, and he has never been apprehended.

Insurer contends the evidence was insufficient to support the jury's verdicts and the judgments entered thereon, and the trial court erred in instructing the jury that the insurance company was required to prove "by clear and convincing evidence" that the insured died as a result of violence intentionally inflicted by another rather than requiring proof of the foregoing by a preponderance of the evidence.

The beneficiaries argue that the death of the insured was accidental because there were so many "unknowns" surrounding insured's death, and that the instruction complained of was a correct statement of the law.

Our inquiry is whether the shooting of the insured which caused his death was intentional or accidental. If the unknown assailant intended to kill the insured, then the shooting was not accidental, and under the plain language of the limitation and exclusion clauses of the policies, the beneficiaries cannot recover. *Travellers' Ins. Co.* v. *McConkey*, 127 U.S. 661, 667-68 (1888); *National Life and Accident Ins. Co.* v. *Knapp*, 430 S.W.2d 84, 89-90 (Texas Civ. App. 1968); *Epps v. Gate City Life Ins. Co.*, 201 N.C. 695, 161 S.E. 211, 212 (1931); 44 Am. Jur. 2d. *Insurance* § 1251 at 97 (1969).

In the present case, the act of the insured's unknown assassin was violent and external, but there are no facts or circumstances tending to show, or even suggest, that the death of the insured was accidental within the meaning of the policies. The evidence shows insured and his assassin were involved in an argument. The assassin told the insured that if he made another move he would shoot him. It is thus apparent that the assassin intended to kill the insured when he pointed his gun at the insured and fired four or five shots, one of them striking insured in his head and causing his death. One must be presumed to intend the natural and probable consequences of his act. *Banovitch* v. *Commonwealth*, 196 Va. 210, 216-17, 83 S.E.2d 369, 373 (1954). The uncontradicted facts admit of but one conclusion, namely: that insured's death resulted from a violent and intentional act by another person. Thus, according to the plain language of the

exclusion and limitation clauses of both policies, there can be no recovery under the insurance contracts.

Since both judgments will have to be reversed and final judgments entered here for the insurer (Code § 8-493), we do not reach the question raised relative to the burden of proof.

For the reasons stated, the judgments are reversed and final judgments áre here entered for the insurer.

*Reversed and final judgments.*