## CIRCUIT COURT OF ROCKINGHAM COUNTY

Rockingham Mutual Ins. Co.

v.

Garland Davis,
Owen Davis, and
Deborah K. Beall

April 26, 2002

Case No. (Law) CL01-12576

BY JUDGE JOHN J. MCGRATH, JR.

This case is before the Court on Plaintiff's Motion for Declaratory Judgment, asking for a declaration that it has no obligation to defend or indemnify Garland Davis or Owen Davis in the lawsuit pending in this court styled *Deborah K. Beall v. Garland Davis and Owen Davis*, CL01-12466.

In accordance with this Court's Order of November 15, 2001, this case is being decided on stipulated evidence and on argument as to the applicable law.

*The Facts*

On May 2, 2000, Deborah K. Beall was employed by Southern Poultry Products to deliver poultry to a farm owned by Garland Davis ("Garland"). When the poultry was delivered, Garland's employee Owen Davis ("Owen") was present. Beall alleges that Owen forcefully grabbed Beall's arm, rubbed various parts of her body in an inappropriate way, and made offensive comments of a sexual nature to her. Beall alleges that Garland was present and took no action to prevent Owen's actions. Beall alleges that, as a result of Owen's actions, she suffered "serious pain of the body," as well as intangible damages to her feelings and business affairs. *See* Amended Motion for Judgment at 3. The Amended Motion for Judgment contains counts against Owen for assault, battery, and insulting words. These same counts are asserted against Garland based solely on the doctrine of respondeat superior, as Owen is alleged to be Garland's employee.

Garland and Owen each have separate homeowners insurance policies issued by Rockingham Mutual Insurance Company ("Rockingham"). While these policies are not identical in all respects, Section II of each policy contains identical language setting forth the liability coverage. The basic liability coverage provision in each policy states:

> If a claim is made or a suit is brought against an insured for damages because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies, we will:
>> 1. pay up to our limit of liability for the damages for which the *insured* is legally liable; and
>> 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent.

*See* Issuing Agreement, at 10 of 15.

The terms "bodily injury" and "occurrence" are subject to specific definitions, as set out in the Agreement Form.

A " '*bodily injury*' means bodily harm, sickness, or disease, including required care, loss of services, and death that results." *See* Insuring Agreement, at 1 of 15.

An " '*occurrence*' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in: *a. bodily injury*; or *b. property damage*." *See* Special Provisions, at 1 of 6.

In addition to these definitions, each policy contains an exclusion which provides that the personal liability coverage does not apply to bodily injury or

property damage "which is expected or intended by the insured." *See* Insuring Agreement, at 11 of 15.

## *The Applicable Law*

When interpreting insurance policies, Virginia courts apply standard rules of contract construction, subject to the statutory measures unique to insurance. *Harleysville Mutual v. Dollins*, 201 Va. 73 (1959). Because insurers typically author the policy language, courts generally construe ambiguous language favorably to policy holders. Thus, ambiguous coverage clauses are generally construed to grant coverage rather than to deny it, and ambiguous exclusions in coverage are construed most strongly against the insurer. *See e.g., Johnson v. North America*, 232 Va. 340 (1986); *St. Paul v. Nusbaum*, 227 Va. 407 (1984); *Ayres v. Harleysville*, 172 Va. 383 (1939); and *Town Crier v. Hume*, 721 F. Supp. 99 (E.D. Va. 1989). It is well accepted that the insurer bears the burden of proving that an exclusion applies. *See Johnson, supra.*

Insurance contracts generally contain three main duties: the insurer's duty to indemnify, the insurer's duty to defend, and the insured's duty to pay premiums. At common law, an insurer has no duty to defend. The duty to defend is purely contractual and is unquestionably broader than the duty to indemnify. *See e.g., Town Crier v. Hume*, 721 F. Supp. 99 (E.D. Va. 1989).

In determining whether an insurer has a duty to defend, courts look only to the allegations contained within the motion for judgment in the underlying case. "If the allegations state a case which may be covered by the policy, [the insurer] has a duty to defend, and it may be liable also to pay any judgment rendered upon those allegations. On the other hand, if it appears clearly that [the insurer] would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend." *Travelers v. Obenshain*, 219 Va. 44, 46 (1978).

One of *Travelers*'s progenitors is the seminal case of *Ocean Accident v. Washington Brick*, 148 Va. 829 (1927), in which the Supreme Court held that an insurer had no duty to defend where the insurance policy explicitly excluded coverage where an employee was illegally employed and the lawsuit was based solely on the violation of a child labor statute. *Ocean Accident* can be viewed as standing for the proposition that it would be illogical to force an insurer to defend a suit in which there is no possibility of an indemnification. Part of the rationale behind *Ocean Accident* is the realization that whenever an insurer undertakes to defend an insured despite knowledge of some breach or exclusion that might excuse coverage, the insurer is subsequently estopped from denying coverage unless it has properly reserved its right to do so. *See e.g., Norman v. North America*, 218 Va. 718 (1978).

Since Owen and Garland are insured by separate insurance policies and are thus both "insureds," Rockingham's duty to defend each of them will be addressed separately.

A. *Duty to Defend Owen Davis*

Beall alleges that "Owen forcefully grabbed her arm," "rubbed his hand across Beall's rear end," "put his hand on Beall's leg as if he were trying to slide his hand up her shorts," and told her "If I give you a couple of beers and break it off in you twice, that would satisfy you." *See* Amended Motion for Judgment at 2.

Beall alleges that this conduct caused her "to suffer serious pain of the body and mind, humiliation, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, disgrace, scandal, injury to her reputation and feelings, and [she] has been harmed in the conduct of her business and affairs." *See* Amended Motion for Judgment at 3.

Rockingham first argues that it has no duty to defend Owen in the underlying case because Beall failed to allege a "bodily injury" as defined by the policy. If there were no possibility of an indemnification under the policy, then under the rule of *Travelers v. Obenshain*, 219 Va. 44 (1978), Rockingham would have no duty to defend.

The policy defines a "bodily injury" as "bodily harm, sickness, or disease, including required care, loss of services, and death that results." *See* Issuing Agreement, at 10 of 15. Counsel have identified no cases in which a Virginia court has decided whether an allegation of "pain of the body" is sufficient to constitute an allegation of "bodily injury" or "bodily harm." Neither has this Court been able to find such a case. For precedent, Rockingham points to two federal cases applying Virginia law: *West American v. Isle of Wight*, 673 F. Supp. 760 (E.D. Va. 1987); and *American v. Church Schools*, 645 F. Supp. 628 (E.D. Va. 1986).

In *Church Schools*, Judge Merhige observed that there is a distinction between "bodily contact" and "bodily injury." "While the Virginia courts have not interpreted the term 'bodily injury,' courts that have interpreted this language have determined that it limits policy coverage to physical injury to the body and does not include claims for purely non-physical or emotional harm." 645 F. Supp. at 632. Judge Merhige attributed to "bodily injury" its plain meaning, and held that "it simply does not cover the Johnsons' claim for purely emotional injury." *Id.* at 632. In *West American*, Judge Ellis followed Judge Merhige's ruling in *Church Schools*, and held "that 'bodily injury'

encompasses to [sic] actual physical harm . . . but not emotional distress. . . ." 673 F. Supp. at 765.

The case at bar is distinguishable from both of the federal cases cited. Although Beall has alleged many varieties of emotional distress, she has also quite simply alleged "physical pain," presumably caused when "Owen forcefully grabbed her arm." Although it may seem a simplistic approach, it is apparent that when a body part is "grabbed" and "pain" is caused by the grabbing, the physiological cause of the "pain" has to be the compression of nerves, tissues, and muscles that results from the "grabbing." It is also interesting to note that the insurance policy defines "occurrence" in terms of "bodily injury" and it defines "bodily injury" in terms of "bodily harm." In turn, *Black's Law Dictionary* (7th ed.) defines "bodily harm" as "physical pain, illness, or impairment of the body." (*Id.*, p. 722.) There is no requirement of permanency or external manifestation; it is sufficient if physical pain is experienced. Construing the language of the policy against the insurer, *see e.g., Johnson v. North America*, 232 Va. 340 (1986), this Court finds that an allegation of "pain of the body" is sufficient to constitute an allegation of "bodily injury" as defined in the insurance policy.

Rockingham's second argument as to Defendant Owen Davis is that there is no duty to defend him because Beall alleges only intentional torts against him, and the policy only covers bodily injuries caused by an "occurrence," and explicitly excludes bodily injuries "which [are] expected or intended by the insured." *See* Issuing Agreement, at 10 of 15, and at 11 of 15, respectively.

The policy defines an "occurrence" as an "accident." *See* Special Provisions at 1 of 6, as well as Issuing Agreement at 1 of 15. In *Utica v. Travelers*, the Supreme Court interpreted the terms "occurrence" and "accident" and found them to be synonymous, and "to refer to an incident that was unexpected from the viewpoint of the insured." 223 Va. 145, 147 (1982). Additionally, the Court held that "[a]n intentional act is neither an 'occurrence' nor an 'accident' and therefore is not covered by the standard policy." *Id.* at 147.

Owen Davis argues that the torts he is alleged to have committed should be considered accidents or occurrences because, from his viewpoint, he neither intended nor expected Beall's adverse reaction. He argues that "from the pleadings before the Court, it is apparent Owen intended only to engage in what he and others present considered to be humorous workplace banter." See Owen's "Memorandum in Opposition of Motion for Declaratory Judgment" at 3.

It does not matter whether or not Owen intended for Beall to experience "pain of the body" and emotional distress when he allegedly touched her. "One must be presumed to intend the natural and probable consequences of

his act[s]." *Citizen's Home v. Nelson*, 218 Va. 216, 218 (1977), quoting *Banovitch v. Commonwealth*, 196 Va. 210, 216-17 (1954). Owen is alleged to have "forcefully grabbed [Beall's] arm" and thus to have committed the intentional tort of battery. "An intentional tort is neither an 'occurrence' nor an 'accident'." *Utica v. Travelers*, 223 Va. 145, 147 (1982).

This Court finds that Beall has alleged only intentional torts against Owen and no claims which may be considered an "occurrence" under the terms of the insurance policy. Since there is no possibility that Rockingham would have to indemnify Owen for a judgment against him in the underlying suit, then under the rule of *Travelers v. Obenshain*, 219 Va. 44 (1978), this Court finds that Rockingham has no duty to defend Owen Davis against Beall's Motion for Judgment or Amended Motion for Judgment in docket number CL-01-12466.

## B. *Duty to Defend Garland Davis*

In her Amended Motion for Judgment, Beall alleges that "Garland was present at the scene and witness to Owen's words and actions," and that "Garland took no action to prevent Owen's words or actions towards Beall." *See* Amended Motion for Judgment at 2. Plaintiff Beall alleges that "[a]t all relevant times, Owen was acting within the scope of his employment and responsibilities as an employee of Garland's poultry farm," and thus that Garland is liable for Owen's torts under the doctrine of respondeat superior. *See* Amended Motion for Judgment at 4.

In all pertinent respects, Garland's insurance policy with Rockingham is identical to Owen's policy. Rockingham argues that it has no duty to defend Garland because Beall has not sufficiently alleged a bodily injury. This argument fails here for the same reasons it failed as to Owen Davis. *See* section A, *supra*.

Rockingham's second argument as to Garland Davis is that it has no duty to defend him because Beall alleged only intentional torts against Owen, and thus Garland could only potentially be held liable for intentional torts under the doctrine of respondeat superior. As described above, it is settled that intentional torts are neither "occurrences" nor "accidents" and thus are not covered by the insurance policy.

Garland Davis argues that under *Utica v. Travelers*, whether or not a tort constitutes an "occurrence" must be determined by asking whether it "was unexpected from the viewpoint of the insured." 223 Va. at 147. Garland argues that there is no allegation that Owen Davis' torts were "intended" or

"expected" by Garland Davis, and thus, from Garland Davis' viewpoint, these torts should constitute "occurrences" as defined under the policy.

Garland Davis argues that "[i]f anything, the allegations in Beall's Amended Motion for Judgment suggest a case of negligent supervision of Owen Davis, which, of course, is not an intentional tort." *See* Garland Davis' Brief in Opposition to Plaintiff's Memorandum in Support of Motion for Declaratory Judgment at 6, 7. Rockingham counters that this argument "is irrelevant since no claim of negligent supervision has been made." *See* Reply Memorandum of Rockingham Mutual Insurance Company at 3.

Under *Travelers v. Obenshain*, 219 Va. 44 (1978), this Court can only look to allegations which were actually made in Beall's Amended Motion for Judgment when determining whether or not there is a duty to defend. Since Beall's allegations could not support a judgment against Garland for negligent supervision of Owen, a claim for negligent supervision will not be considered.

The question then becomes whether, when an employer is alleged to be liable for his employee's intentional torts under the doctrine of respondeat superior and when there is no allegation that the employer intended, expected, or ratified those torts, should those torts be considered unexpected when viewed from the standpoint of the employer and thus considered accidental "occurrences" under *Utica v. Travelers*, 223 Va. 145 (1982)? Counsel have identified no cases in which a Virginia court has decided this precise issue. Neither has this Court been able to find such a case.

Virginia case law makes it clear that "pursuant to the doctrine of respondeat superior, an employer is liable for the tortious acts of its employee if that employee was performing the employer's business and acting within the scope of the employment when the tortious acts were committed." *Giant v. Enger*, 257 Va. 513 (1999).[1] It is clear that respondeat superior can make an employer liable for intentional torts, as well as negligent ones. *See e.g., Giant, supra; Plummer v. Center Psychiatrists*, 252 Va. 233 (1996); *Commercial Business v. BellSouth*, 249 Va. 39 (1995); *Tri-State v. Walsh*, 188 Va. 299 (1948).

However, Virginia law also makes it abundantly clear that there is a difference between the level of liability an employer ultimately faces for an

---

[1] Most of the recent appellate cases in Virginia which deal with respondeat superior address whether a particular tortfeasor employee was acting within the scope of his or her employment at the time of the tort. This is often a difficult question and a question for the jury. *See e.g., Giant v. Enger*, 257 Va. 513 (1999); *Plummer v. Center Psychiatrists*, 252 Va. 233 (1996). However, because Beall alleged that Owen was at all relevant times acting within the scope of his employment, this question is not currently in issue.

employee's intentional tort under respondeat superior and the level of liability that the employee tortfeasor ultimately faces; this is because the employee tortfeasor may ultimately face punitive damages, but punitive damages "cannot be awarded against a master or principal for the wrongful act of his servant or agent in which he did not participate, and which he did not authorize or ratify." *Freeman v. Sproles*, 204 Va. 353, 358 (1963), *quoting Hogg v. Plant*, 145 Va. 175, 181 (1926). Virginia law certainly may hold an employer liable for an employee's intentional tort, but unless the employer authorized, ratified, or participated in the tort, the employer will not face exemplary damages.

Courts outside Virginia have addressed the specific issues raised by this case. Rockingham cites an unpublished federal case applying Virginia law, *National Fruit v. Fireman's Fund*, for the proposition that "claims of agency liability, respondeat superior, and strict liability for the intentional acts of an agent do not impose a duty to defend" an employer in cases where coverage is limited to "occurrences." 1999 U.S. App. LEXIS 8417, at 10. The Fourth Circuit Court of Appeals in *National Fruit* cited *American and Foreign Ins. Co. v. Church Schools*, 645 F. Supp. 628 (E.D. Va. 1986), for the proposition that under Virginia law "allegations of intentional torts by an employee do not impose a duty to defend under 'occurrence' language of employer's insurance policy." *National Fruit*, 1999 U.S. App. LEXIS 8417, at 10.

The federal courts, in applying Virginia law and the law of other states, have generally ruled that the issuer of insurance policies which insure only against accidental "occurrences" have no duty to defend an employer when the employee committed an intentional assault and battery and the employer is liable only because of respondeat superior. *See e.g., Britamco Underwriters Inc. v. Stokes*, 881 F. Supp. 196 (E.D. Pa. 1995); *West American Ins. Co. v. Bank of Isle of Wight*, 673 F. Supp. 760 (E.D. Va. 1987); *American and Foreign Ins. Co. v. Church Schools*, 645 F. Supp. 628 (E.D. Va. 1986).

After considering authorities both within and without the Commonwealth, this Court is persuaded that although an employer and an employee do not necessarily face precisely the same level of liability when the employer is held liable for his employee's intentional torts under respondeat superior (in the absence of authorization, ratification, or participation in the tort by the employer), the employer is still ultimately being held liable for an intentional tort and not a tort sounding in negligence. The doctrine of respondeat superior attributes the bad intentions of the employee to the employer; a tort which was intentional when it was committed cannot be considered unexpected, even when viewed from the standpoint of the employer, and does not become an

"occurrence" in the *Utica v. Travelers* sense simply by operation of respondeat superior.

This Court holds that when an employer is alleged to be liable for his employee's intentional torts under the doctrine of respondeat superior, these torts cannot be considered accidental "occurrences," even when there has been no allegation that the employer intended, expected, or ratified the torts.

This Court finds that Beall alleged only intentional torts against Garland Davis, and no claims which may be considered "occurrences" under the policy. Since there is no possibility that Rockingham would have to indemnify Garland for a judgment against him in the underlying suit, then, under the rule of *Travelers v. Obenshain*, 219 Va. 44 (1978), this Court finds that Rockingham has no duty to defend Garland Davis against Beall's Motion for Judgment or Amended Motion for Judgment in docket number CL-12466.

Wherefore, it is hereby adjudged, ordered, decreed, and declared that Rockingham Mutual Insurance Company has no obligation to defend or indemnify Garland Davis or Owen Davis in the lawsuit pending in this court styled *Deborah K. Beall v. Garland Davis and Owen Davis*, CL01-12466.

Endorsement of this Order by counsel is waived pursuant to Rule 1:13 of the Supreme Court of Virginia.

Nothing further remaining to be done with this case, it is hereby removed from the docket.

The Clerk of the Court is directed to send certified copies of this Opinion and Order to Thomas G. Bell, Counsel for the Plaintiff Rockingham Mutual Insurance Company; to Brian K. Brake, Counsel for the Defendant Garland Davis; to Derrick W. Whetzel, Counsel for the Defendant Owen Davis; and to A. Gene Hart, Counsel for the Defendant Deborah K. Beall.