**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-2254**

LIBERTY UNIVERSITY, INC.,

Plaintiff – Appellee,

v.

CITIZENS INSURANCE COMPANY OF AMERICA; HANOVER AMERICAN
INSURANCE COMPANY; HANOVER INSURANCE COMPANY,

Defendants – Appellants.

Appeal from the United States District Court for the Western
District of Virginia, at Lynchburg. Norman K. Moon, Senior
District Judge. (6:13-cv-00033-NKM-RSB)

Argued: May 13, 2015                    Decided: July 10, 2015

Before NIEMEYER, DUNCAN, and THACKER, Circuit Judges.

Vacated and remanded by published opinion. Judge Thacker wrote
the opinion, in which Judge Niemeyer and Judge Duncan joined.

**ARGUED:** John Peter Malloy, ROBINSON & COLE LLP, Hartford,
Connecticut, for Appellants. Harold Edward Johnson, WILLIAMS
MULLEN, Richmond, Virginia, for Appellee. **ON BRIEF:** Thomas S.
Garrett, HARMAN CLAYTOR CORRIGAN & WELLMAN, Richmond, Virginia;
Wystan M. Ackerman, ROBINSON & COLE LLP, Hartford, Connecticut,
for Appellants. Calvin W. Fowler, Jr., WILLIAMS MULLEN,
Richmond, Virginia, for Appellee.

THACKER, Circuit Judge:

In November 2012, Janet Jenkins sued Liberty University, Inc. ("Appellee"), alleging that the school participated -- both directly and vicariously -- in a scheme to kidnap Jenkins's daughter in order to disrupt the parent-child relationship. In her complaint ("Jenkins Complaint"), Jenkins alleged that Appellee and its agents helped Lisa Miller, the child's biological mother and Jenkins' former partner in a same-sex civil union, to defy state court visitation orders and to abscond with the child to Nicaragua.

The district court ruled that Citizens Insurance Company of America ("Appellant"), Appellee's liability insurance carrier, has a duty to defend Appellee. Under the insurance policy at issue, Appellant must defend Appellee against suits alleging certain harms that arise from an "occurrence" -- an unexpected accident, which does not fall under any of the coverage exclusions. The policy also contains a "Separation of Insureds" provision, which requires the court to evaluate a claim by each named insured individually.[1] Concluding that this

---

[1] In addition to Appellee, the Jenkins Complaint names Victoria Hyden, who was a "student worker" at Liberty University School of Law, as a defendant. J.A. 44. The Jenkins Complaint alleges that Hyden acted as Appellee's agent when she "aided and abetted" the kidnapping. Id. at 49 (internal quotation marks omitted). Although the Jenkins Complaint names many other
(Continued)

2

Separation of Insureds provision is ambiguous and should be interpreted in Appellee's favor, the district court refused to consider the intent of Appellee's agents when determining if the complaint alleged an accidental "occurrence" and whether the policy's exclusions applied. The district court also decided that, even if the Separation of Insureds provision would not prevent imputing the intent of Appellee's agents to Appellee, the Jenkins Complaint failed to "sufficiently allege" Appellee's vicarious liability. Thus, the district court granted summary judgment and awarded defense costs to Appellee.

We conclude otherwise. Because the Jenkins Complaint does not allege an "occurrence," and because it triggers the policy's coverage exclusions, Appellant has no duty to defend.

I.

We review a grant of summary judgment de novo. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 155 (4th Cir. 2009).

---

defendants, they are not named insureds under the policy and are not essential to resolving this appeal.

Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

II.

A.

<u>The Jenkins Complaint</u>

The child at the core of this dispute was born to Lisa Miller and Janet Jenkins in 2002 while the two women were joined in a Vermont same-sex civil union. Miller is the biological mother and a legal parent to the child. Jenkins is also the child's legal parent, pursuant to a 2004 Vermont state court ruling. Miller subsequently converted to Christianity; moved to Virginia; and believing that homosexuality was sinful, sought to prevent Jenkins from having contact with her daughter. For several years, Miller defied visitation orders issued by Vermont and Virginia courts. In 2009, facing the possibility that Vermont or Virginia would transfer custody to Jenkins, Miller absconded to Nicaragua with the child. Jenkins has not seen her daughter since.

Jenkins brought a lawsuit in Vermont district court on her own behalf and on behalf of her daughter in November 2012. Appellee and Victoria Hyden, a student worker at Liberty University, were among the named defendants. The Jenkins Complaint alleges that Appellee assisted Miller by withholding the child from Jenkins and by taking the child out of the country. As a result, Jenkins claims Appellee was directly liable for conspiring to "commit the intentional tort of

4

kidnapping," which is "chargeable as a criminal offense under Vermont law," and conspiring "through [a] pattern of racketeering" to kidnap the child and to "assure her continued detention" in Nicaragua in violation of the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d).[2] J.A. 49, 51. The Jenkins Complaint also asserts that Appellee was vicariously liable for the role Hyden played in the kidnapping, for its agents' racketeering, and for its agents' participation in a conspiracy to violate Jenkins's and the child's "rights to a parent-child relationship." Id. at 46, 49.

In particular, the Jenkins Complaint charges that Miller retained the dean of Liberty University School of Law, Mathew Staver, and one of the school's professors, Rena Lindevaldsen, as her attorneys. As alleged, Staver and Lindevaldsen encouraged and assisted Miller in violating state court orders, established social media forums soliciting

---

[2] Pursuant to 18 U.S.C. § 1962,

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

18 U.S.C. § 1962(c). Section 1962(d) criminalizes conspiring to violate § 1962(c).

donations to groups that aimed to "prevent court ordered contact" between Jenkins and her daughter, and planned with other co-conspirators to kidnap the child. J.A. 42. The Jenkins Complaint further accuses Victoria Hyden, an employee of the law school, of calling Miller's father to help transport Miller and the child to a parking lot in Lynchburg, Virginia, where Philip Zodhiates -- who is Hyden's father and was one of Staver's acquaintances -- picked them up and drove them to the Canadian border. Staver allegedly aided the kidnapping by using telephone lines registered to Liberty University to speak to Zodhiates as he drove back from the Canadian border. Therefore, "[w]ith the assistance of . . . Philip Zodhiates and Victoria [Hyden] . . . as agents of . . . Liberty University . . . Miller was able to leave the United States" with the child. Id. at 46.

The Jenkins Complaint also alleges that Appellee and its agents "enable[d] [Miller] to remain outside the country." J.A. 44. For example, Lindevaldsen allegedly founded a Facebook group to solicit donations for Miller while Miller was hiding with the child in Nicaragua. The Jenkins Complaint also asserts that Hyden emailed "her co-workers at the law school requesting donations for supplies to send to . . . Miller to enable her to remain outside the country." Id. at 44. The Jenkins Complaint further alleges that Staver and Lindevaldsen "routinely instructed their Law School students that the correct course of

6

action for a person in . . . Miller's situation would be to engage in 'civil disobedience' and defy court orders." Id. at 45. As such, "Liberty University encouraged its agents to disregard state laws governing parental rights . . . of same-sex families." Id. at 45-46.

Based on these facts, the Jenkins Complaint alleges that Appellee was directly liable for its involvement in the kidnapping scheme and, at the same time, vicariously liable because it "promoted, condoned and explicitly ratified its agent[s'] tortious, racketeering activity." J.A. 46. The Jenkins Complaint sought damages for these injuries.

B.

The Policy

The policy at issue was effective from February 2009 to February 2010 and contains two coverage forms: (1) Commercial General Liability coverage ("CGL") and (2) School and Educators Legal Liability coverage ("SELL").[3]

---

[3] Technically, there are four insurance policies at issue. But two of these are umbrella policies that the parties agree have essentially the same terms as the CGL and the SELL.

1.

### CGL Coverage

The CGL itself provides two subsidiary coverage forms: Coverage A and Coverage B.

a.

### Coverage A

Under Coverage A, Appellant must defend suits seeking damages for "bodily injury" and "property damage" arising from an "occurrence." J.A. 68. Consistent with Virginia law, the policy defines the terms "occurrence and accident . . . synonymous[ly] [as] refer[ing] to an incident that was unexpected from the viewpoint of the insured." AES Corp. v. Steadfast Ins. Co., 725 S.E.2d 532, 536 (Va. 2012) (internal quotation marks omitted); J.A. 81. According to the Supreme Court of Virginia:

> For coverage to be precluded under a CGL policy because there was no occurrence, it must be alleged that the result of an insured's intentional act was more than a possibility; it must be alleged that the insured subjectively intended or anticipated the result of its intentional act or that objectively, the result was a natural or probable consequence of the intentional act.
> . . . .
> . . . Where the harmful consequences of an act are alleged to have been not just possible, but the natural and probable consequences of an intentional act, choosing to perform the act deliberately, even if in ignorance of that fact, does not make the resulting injury an 'accident' . . . .

AES, 725 S.E.2d at 536, 538 (internal quotation marks omitted).

Accordingly, a suit alleging only intentional torts does not

state an "occurrence." See Travelers Indem. Co. v. Obenshain,

245 S.E.2d 247, 249 (Va. 1978). Even if the insured

demonstrates that the suit alleges "bodily injury" or "property

damage" arising from an "occurrence," Coverage A's "Expected

Injury Exclusion" excludes "'[b]odily injury' or 'property

damage' expected or intended from the standpoint of the

insured." J.A. 69.

b.

## Coverage B

Coverage B insures against suits alleging "personal

and advertising injury," the definition of which includes

"[f]alse arrest, detention or imprisonment." J.A. 81. The

policy defines "wrongful act" as:

> any breach of duty . . . committed by an insured:
>
> a. In the lawful discharge of the duties that are characteristic of, distinctive or inherent to the operation and functioning of an educational institution; and
>
> b. While acting within the course and scope of their duties for the named insured.

Id. at 130. But Coverage B's "Criminal Acts Exclusion" excludes

any "'[p]ersonal and advertising injury' arising out of a

9

criminal act committed by or at the direction of the insured."
Id. at 73. And Coverage B's "Knowing Violation Exclusion" excludes any "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" ("Knowing Violation Exclusion"). Id.

### 2.

### SELL Coverage

Under the SELL, Appellant has the duty to defend against any claim "[a]lleging injury arising out of a wrongful act . . . and seeking loss because of such injury." J.A. 116 (internal quotation marks omitted). The SELL policy contains an "Intentional and Criminal Acts Exclusion," which excludes coverage for:

> [a]ny "claim" arising out of any intentional, dishonest, fraudulent, criminal, or malicious act or omission or any willful violation of law by the insured . . . .
> . . . .
> This exclusion precludes coverage for all insured persons under the policy regardless whether the person seeking coverage participated in any way in the intentional or criminal acts or omissions.

Id. at 116.

10

3.

<u>Separation of Insureds</u>

The insurance policy includes a Separation of Insureds provision, which states:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage part to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

J.A. 159.

When multiple named insureds claim the right to a defense against the same suit, a separation of insureds clause requires the insurer to evaluate the claims against each named insured individually. The insurer treats each insured as if he or she has separate insurance coverage, so that excluded conduct by one insured does not preclude claims brought by other insureds. <u>See</u> <u>W. Am. Ins. Co. v. AV&S</u>, 145 F.3d 1224, 1227-29 (10th Cir. 1998); <u>see, e.g.</u>, <u>Commercial Standard Ins. Co. v. Am. Gen. Ins. Co.</u>, 455 S.W.2d 714, 721 (Tex. 1970) (construing a severability of interests clause, which "refer[s] to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage thereunder"

11

(internal quotation marks omitted)).  The policy designates Appellee's "employees," "volunteer workers," "student groups," and "executive officers" as additional named insureds.  J.A. 62, 75-76 (internal quotation marks omitted).

C.

Underlying Litigation

Faced with the Jenkins Complaint, Appellee turned to Appellant, seeking to have Appellant defend the lawsuit on its behalf.  When Appellant refused, Appellee filed a complaint in district court, requesting a declaration of its right to a defense and an award of damages for costs and fees it had already incurred defending against the Jenkins Complaint.  The parties filed cross-motions for summary judgment.  The district court granted summary judgment in favor of Appellee, holding Appellant had a duty to defend and awarding defense costs.

The district court began its analysis with the CGL. Regarding Coverage A, the court determined that the Jenkins Complaint did not allege "bodily injury" but that it sought damages for "property damage" allegedly caused by Appellee and its agents.  It determined that, under Virginia law, Appellee could become liable for physical injury to the plaintiffs' tangible property because the Jenkins Complaint alleged that the "[p]laintiffs suffered injury to their . . . property, including . . . deprivation of personal property."  J.A. 51; see Liberty

12

Univ., Inc. v. Citizens Ins. Co. of Am., 16 F. Supp. 3d 636, 653-54 (W.D. Va. 2014).

The district court then turned to whether the alleged "property damage" arose from an "occurrence," as defined by the policy. It recognized that the "Jenkins Complaint made claims for only intentional torts" and that, if the intent of Appellee's agents was imputed to Appellee, Appellee "should have reasonably anticipated or foreseen the incident of [the child]'s abduction." Liberty, 16 F. Supp. 3d at 655, 659-60. But the district court nonetheless concluded that the Jenkins Complaint alleges an "occurrence" for two reasons.

First, the district court opined that, although no Virginia court had interpreted a separation of insureds clause, relevant case law forbade the court from imputing to Appellee the intent of its agents -- even though the Jenkins Complaint unequivocally alleged Appellee's liability in respondeat superior for its agents' acts. See Liberty, 16 F. Supp. 3d at 655-60. Noting that separation of insureds clauses generally direct "courts [to] consider each insured separately under the contract in determining whether provisions excluding the insured from coverage apply to that particular insured," the district court believed the Separation of Insureds provision in this case required it to "separate the intent [and expectations] of Liberty's agents and employees from Liberty's own." Liberty, 16

13

F. Supp. 3d at 659, 660 (internal quotation marks omitted). Therefore, the district court reasoned that, although Appellee was allegedly responsible for the kidnapping through its employee Hyden -- who was also a named insured -- Appellee could not become liable for causing damage that arose from an "occurrence" because the Jenkins Complaint does not allege that Appellee individually expected or intended the alleged kidnapping. The district court held in the alternative that, even if the Separation of Insureds provision did not unambiguously require it to separate the intent of Appellee's agents, the provision at least "create[d] an ambiguity in the contract" as to "whether the expectations of Liberty's agents . . . would be imputed to Liberty" -- an ambiguity that "must [be] construe[d] in favor of . . . the insured." Id. at 659.

Second, the district court concluded that Appellee could not be held liable for damages arising from an "occurrence" because the Jenkins Complaint did not "sufficiently allege" Appellee's vicarious liability. The district court opined that, because the complaint supplied "only conclusory allegations that tie Liberty to the actions of its alleged agents and employees" and "provide[d] no facts to support allegations of vicarious liability," there could be no

14

"imputation of [its] tortfeasor employees' expectations." Liberty, 16 F. Supp. 3d at 660-61.

Turning to CGL Coverage B, the district court determined that the Jenkins Complaint alleged "personal and advertising injury," but, based on essentially the same reasoning for its decision that the complaint did not plead an "occurrence" under Coverage A, the court concluded that neither the Knowing Violation Exclusion nor the Criminal Acts Exclusion applied.

The district court's analysis of the SELL coverage was similar. That is, the court concluded that the Jenkins Complaint pled an injury arising from a "wrongful act," because its "factual allegations [supported an inference] that Liberty was essentially negligent in urging civil disobedience of court orders" without implicating the Intentional and Criminal Acts Exclusion. Liberty, 16 F. Supp. 3d at 672.

III.

A.

Virginia Insurance Law

Because our jurisdiction rests in diversity, we apply the law of Virginia and its choice of law rules. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635

15

(4th Cir. 2005). Virginia substantive insurance law applies to policies that are delivered to insureds in Virginia. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009); Res. Bankshares Corp., 407 F.3d at 635-36. It is undisputed that the policy was delivered to Appellee, a Virginia-based university. If we are presented with an issue that Virginia's highest court has not directly or indirectly addressed, we must anticipate how it would rule. See Ellis v. Grant Thornton LLP, 530 F.3d 280, 287 (4th Cir. 2008).

Virginia applies the "Eight Corners Rule" to determine if an insurer has a duty to defend a lawsuit against the insured. See AES Corp. v. Steadfast Ins. Co., 725 S.E.2d 532, 535 (Va. 2012). Under the Eight Corners Rule, we "compar[e] the 'four corners' of the underlying complaint with the 'four corners' of the policy[] to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." Id.

The insured has the initial burden to establish a duty to defend, but this burden is not onerous because "[p]rinciples of insurance law in Virginia . . . are solicitous of insureds." CACI, 566 F.3d at 155. The duty to defend is much broader than the duty to indemnify because, "while . . . the duty to indemnify relies on litigated facts," id. at 154, the duty to defend arises "whenever the [underlying] complaint alleges facts

16

and circumstances, some of which would, if proved, fall within the risk covered by the policy," AES, 725 S.E.2d at 535 (internal quotation marks omitted).

Indeed, when a complaint's allegations could support alternative theories of liability (e.g., claims for both intentional torts and negligence) and one theory falls within the coverage agreement, the insurer has a duty to defend the insured against all claims. Parker v. Hartford Fire Ins. Co., 278 S.E.2d 803, 804 (Va. 1981) (holding that an exclusion for intentional injury did not preclude coverage, even though complaint alleged intentional trespass, because under Virginia law a claim for intentional trespass could also "support[] a judgment of unintentional trespass" without amendment (internal quotation marks omitted)).[4] "On the other hand, if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend." AES, 725 S.E.2d at 536-38; see, e.g., Premier Pet Prods., LLC v. Travelers Prop. Cas. Co. of Am., 678 F. Supp. 2d 409, 418-19 (E.D. Va. 2010).

_____

[4] See also Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP, 472 F. App'x 219, 225 (4th Cir. 2012) (unpublished) (noting that Parker v. Hartford Fire Insurance Co. does not hold that a duty to defend lies when a complaint would support "any conceivable cause of action" and still requires "that the complaint actually asserts the claim" (emphasis omitted)).

17

If the insured demonstrates that the complaint alleges a covered injury, the burden shifts to the insurer to show that the policy's "exclusionary language . . . clearly and unambiguously bring[s] the particular [alleged] act or omission within its scope." Floyd v. N. Neck Ins. Co., 427 S.E.2d 193, 196 (Va. 1993); see also Fuisz v. Selective Ins. Co. of Am., 61 F.3d 238, 244-45 (4th Cir. 1995). However, ambiguities in an insurance policy are construed against the insurer, who presumably drafted the contract and "could have written it more clearly." CACI, 566 F.3d at 155.

## B.

## Analysis

We conclude that the district court erroneously interpreted the Jenkins Complaint, the Separation of Insureds provision, and Virginia law.

### 1.

### CGL Coverage A

#### a.

#### "Occurrence" and Respondeat Superior Liability

As to CGL Coverage A, we hold that the Jenkins Complaint, which only alleges Appellee's liability for intentional conduct, does not plead an "occurrence," notwithstanding the Separation of Insureds provision.

In the first place, we conclude that Virginia's highest court would hold that an allegation of a principal's liability under the theory of respondeat superior for the intentional acts of an agent does not state an "occurrence." In Rockingham Mutual Insurance Co. v. Davis, an employee sued her employer claiming it was vicariously liable for the intentional tort of another employee. See 58 Va. Cir. 466, 467 (2002). The employer's insurer sought a declaration that it had no duty to defend because the underlying complaint did not state an "occurrence." The Circuit Court of Rockingham County, Virginia agreed, concluding that an intentional tort "cannot be considered unexpected, even when viewed from the standpoint of the employer, and does not become an 'occurrence' . . . simply by operation of respondeat superior." Id. at 473-74 (emphasis supplied). This is because Virginia holds that an agent's state of mind is ordinarily imputed to the principal. See Fulwiler v. Peters, 20 S.E.2d 500, 503 (Va. 1942) ("The general rule is that knowledge of the agent is imputed to the principal . . . ."); Atl. Envtl. Constr. Co. v. Malveaux, 762 S.E.2d 409, 412 (Va. Ct. App. 2014); Magco of Md., Inc. v. Barr, 531 S.E.2d 614, 617 (Va. Ct. App. 2000) ("Indeed, it is a longstanding principle in the Commonwealth that a foreman's knowledge of facts or events on a worksite is imputed to his employer."); Rockingham, 58 Va.

19

Cir. at 473 ("The doctrine of respondeat superior attributes the bad intentions of the employee to the employer . . . .").[5]

Federal district courts sitting in Virginia -- including the district court below -- have also applied this rule. See, e.g., Liberty Univ., Inc. v. Citizens Ins. Co. of Am., 16 F. Supp. 3d 636, 656 (W.D. Va. 2014) ("[A]n insurance company would have no duty to defend an employer for claims based on the intentional torts of its employees."); State Farm Fire & Cas. Co. v. Frank, No. 4:10-cv-99, 2011 WL 1883987, at *10 (E.D. Va. Apr. 20, 2011); Am. & Foreign Ins. Co. v. Church Sch. in Diocese of Va., 645 F. Supp. 628, 633 (E.D. Va. 1986) (concluding that under an occurrence-based insurance policy, allegations of respondeat superior liability for agents' intentional torts "are not covered and impose no duty to defend").

Therefore, in this case the pivotal issue is whether the Separation of Insureds provision alters Virginia's rule that the expectations and bad intentions of Appellee's agents are

---

[5] Likewise, in an unpublished disposition we observed that under Virginia law "claims of agency liability [and] respondeat superior . . . for the intentional acts of an agent do not impose a duty to defend," even if viewed from the perspective of the insured. Nat'l Fruit Prod. Co. v. Fireman's Fund Ins. Co., No. 98-1471, 1999 WL 270033, at *3 (4th Cir. May 4, 1999) (unpublished).

imputed to Appellee. The district court concluded the provision alters Virginia's rule. We disagree.

Although the Separation of Insureds provision requires the coverage claims of each named insured to be evaluated "[s]eparately to each insured against whom claim is made or 'suit' is brought," J.A. 159, it does not displace Virginia's rule that an agent's intentionally tortious act cannot be "unexpected" by the principal who is vicariously liable for the act. See State Farm, 2011 WL 1883987, at *10; Church Sch., 645 F. Supp. at 633; Rockingham, 58 Va. Cir. at 467. Because she was either an "employee" or a "volunteer worker" under the terms of the policy, Hyden would qualify as a named insured. J.A. 76. The Jenkins Complaint names Hyden as a defendant, so we must analyze Appellee's coverage claim separately.[6] But even if we imagine that Appellee was the only party sued in this case and the only insured requesting a defense under the policy, the Jenkins Complaint still frames Appellee's liability in terms of respondeat superior. Therefore, we have ample reason to anticipate that Virginia courts would impute the intent of Appellee's agents accordingly.

---

[6] Although Staver and Lindevaldsen are named insureds, the Jenkins Complaint does not name them as defendants.

21

Our decision in IFCO Systems of North America, Inc. v. American Home Assurance Co., 502 F. App'x 342 (4th Cir. 2013) (unpublished), and other cases cited by the district court, are inapposite. The district court below viewed the issue in IFCO Systems as "whether an insurance company had a duty to defend an employer for intentional tort claims against its employees." Liberty, 16 F. Supp. 3d at 659. This is an incorrect view because, in IFCO Systems, the underlying complaint asserted claims against the insured for, inter alia, negligent supervision and hiring and conversion under a theory of vicarious liability -- all arising from thefts committed by the insured's employees. See IFCO, 502 F. App'x at 343-44. The policy provided occurrence-based coverage and contained a separation of insureds provision. Analyzing whether there was a duty to defend, we distinguished allegations of a principal's vicarious liability for its agent's intentional torts -- which would not constitute an "occurrence," despite the separation of insureds provision -- from assertions that the principal was liable for the agent's intentional act due to its negligent failure to supervise. See id. at 345, 347 (observing that "none of the . . . cases cited by the district court [were] directly on point" because "none of the cases involved a situation where the court was asked to determine whether an employee's intentional conduct could be treated as an 'accident' in a

22

subsequent <u>negligence</u> action against the employer" (emphasis in original)). Because negligent hiring or supervision actions depend on whether the alleged harm was reasonably foreseeable, we concluded the separation of insureds clause may have "require[d] us to approach the question of coverage solely from IFCO's perspective." <u>Id.</u> at 347. Therefore, we certified the question of whether, "[i]n a negligent hiring and supervision action against an insured-employer, . . . the intentional conduct of an employee of the insured constitute[d] a covered 'occurrence.'" <u>Id.</u> at 343. Notably, we did not certify a similar question regarding the complaint's allegation that the insured was vicariously liable for its employees' conversion.

When a complaint alleges the liability of a principal for the intentional acts of an agent under a negligent supervision theory, a separation of insureds clause may implicate the duty to defend. There are several reasons why this result may occur. First, a negligent supervision action is not particularly concerned with the agent's intent or expectations -- the claim is predicated on whether the harm was foreseeable. <u>See</u> <u>Interim Pers. of Cent. Va., Inc. v. Messer</u>, 559 S.E.2d 704, 707 (Va. 2002). Second, because a negligent supervision claim alleges the principal's direct liability, a separation of insureds clause may require the court to look at whether the harm was foreseeable solely from the principal's

23

perspective. See IFCO, 502 F. App'x at 347. And, in the context of an occurrence-based policy, Virginia's potentiality rule holds that insurers must defend an entire suit if any of the complaint's allegations could support a judgment that the principal did not expect, intend, or foresee the agent's intentional tort. See Travelers Indem. Co. v. Obenshain, 245 S.E.2d 247, 249 (Va. 1978) ("If the allegations state a case which may be covered by the policy, Travelers has a duty to defend . . . .").

The cases the district court cited merely demonstrate these propositions. See Pac. Ins. Co. v. Catholic Bishop of Spokane, 450 F. Supp. 2d 1186, 1202 (E.D. Wash. 2006) (rejecting insurer's argument that the alleged sexual abuse was not a covered "accident" because insurer "disregard[ed] the fact that the claims against the diocese [were] based upon alleged negligent hiring, supervision, and retention, not an intentional wrong of direct sexual abuse"); King, 85 S.W.3d at 185, 188-92 (finding duty to defend because insured was sued for intentional torts under a theory of respondeat superior and for negligence and the policy contained a separation of insureds provision and because the "employer's alleged negligent hiring, training, and supervision constitute[d] an 'occurrence' under the terms of the insurance policy although the injury was directly caused by the employee's intentional conduct'"); Unigard Mut. Ins. Co. v.

24

<u>Argonaut Ins. Co.</u>, 579 P.2d 1015, 1018 (Wash. Ct. App. 1978) (separating claims against a child for his intentional act of burning a school, which precluded the duty to defend, from claims against the child's parents for negligent supervision, which was not an excluded intentional act).

Critically, unlike the underlying complaints considered in the cases cited by the district court, the Jenkins Complaint does not allege that Appellee was responsible for its agents' intentional acts because it was negligent. Rather, the Jenkins Complaint alleges that Appellee is directly liable for harm arising from its intentional participation in conspiracies and vicariously liable for the intentional acts of its agents. For these reasons, the Separation of Insureds provision unambiguously would not displace the ordinary rule in Virginia that a complaint alleging a principal's liability solely in respondeat superior for the acts of its agent does not state an "occurrence."

Furthermore, even if the Separation of Insureds provision was ambiguous, the district court's interpretation contradicts the clearly-stated intent of the parties. Under Virginia law, courts must interpret insurance policies consistent with the parties' intent. <u>See</u> <u>Transit Cas. Co. v. Hartman's, Inc.</u>, 239 S.E.2d 894, 897 (Va. 1978); <u>see also</u> <u>Safeco Ins. Co. of Am. v. Merrimack Mut. Fire Ins. Co.</u>, 785 F.2d 480,

482 (4th Cir. 1986). Ambiguities in the instrument must be construed in favor of the insured. But we do not entertain an absurd result -- one that would "enlarge the obligations undertaken originally by the insurer, and would permit a windfall to [the insured]." Transit Cas. Co., 239 S.E.2d at 897.

While Virginia law provides that an agent's intent is imputed to the principal for the purpose of determining whether an injury was an "occurrence" (i.e., expected from the principal's perspective) the district court would impose a duty to defend even though the policy clearly states that any harm that was "expected or intended from the standpoint of the insured" is excluded from coverage. J.A. 69; see also Nw. G.F. Mut. Ins. Co. v. Norgard, 518 N.W.2d 179, 184 (N.D. 1994) (stating that "the purpose of severability clauses is to spread protection, to the limits of coverage, among all of the . . . insureds. The purpose is not to negate bargained-for exclusions which are plainly worded" (alteration in original) (internal quotation marks omitted)).

The district court's interpretation enlarges Appellant's obligation beyond what it anticipated. And because Virginia recognizes that a corporation, like Appellee, "can act only through its officers and agents," Pulliam v. Coastal Emergency Servs. of Richmond, Inc., 509 S.E.2d 307, 320 (Va.

26

1999), the district court's construction of the Separation of Insureds provision would nullify the Expected Injury Exclusion for allegations of vicarious liability against organizational or corporate insureds, creating a windfall to Appellee. Cf. Minkler v. Safeco Ins. Co. of Am., 232 P.3d 612, 621 (Cal. 2010) (holding that to permit a severability of insurance clause to prevail over a plainly worded exclusion for intentional acts "would effectively nullify a policy exclusion in the case of married coinsureds, since one coinsured spouse could always demand coverage for the excluded tortious act of the other on the mere basis of derivative community property liability").

For the foregoing reasons, we conclude the Separation of Insureds provision does not displace Virginia's rule that an insurer has no duty to defend against a suit alleging the insured is liable for the intentional acts of its agents under a theory of respondeat superior. Because the Jenkins Complaint alleges only intentional acts, we hold that it does not allege Appellee's liability for damage arising from an "occurrence."

b.

"Sufficient" Allegations of Respondeat Superior

We now turn to the district court's alternative basis for holding that the Jenkins Complaint does not state an "occurrence." In this section of its opinion, the district court reasoned that, even if the Separation of Insureds

27

provision did not preclude ascribing to Appellee its agents' expectations, the Jenkins Complaint "did not state a plausible claim that Liberty is liable for intentional torts," offered "only conclusory allegations that tie Liberty to the actions of its alleged agents and employees," and "provide[d] no facts to support allegations of vicarious liability."  Liberty, 16 F. Supp. 3d at 660, 661, 663.  Significantly, when determining whether insurance coverage exists, Virginia courts do not ask if a complaint "sufficiently" alleges facts in support of a claim such that it would survive a motion to dismiss.  Instead, they determine whether the complaint alleges facts and circumstances that fall within the four corners of the policy.  The claim's probability of success is inconsequential.  See Fuisz, 61 F.3d at 244-45; Church Sch., 645 F. Supp. at 633; AES, 725 S.E.2d at 535 ("[I]t is a well-established principle, consistently applied in this Commonwealth, that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured."); cf. CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 155-56 (4th Cir. 2009) (acknowledging differences between a Rule 12(b)(6) analysis and a duty-to-defend analysis).  The Jenkins Complaint clearly alleges facts and circumstances demonstrating that

28

Appellee is liable in respondeat superior for kidnapping and racketeering through its agent Hyden.

Therefore, we conclude Appellant has no duty to defend Appellee under CGL Coverage A.

2.

CGL Coverage B

We also hold that Appellant has no duty to defend pursuant to CGL Coverage B because, assuming the Jenkins Complaint alleged "personal and advertising injury," the Criminal Acts Exclusion clearly applies.

The district court concluded that CGL Coverage B's exclusion for criminal acts did not apply because the Jenkins Complaint's "allegations insufficiently tie Liberty to any criminal acts either directly or vicariously." Liberty, 16 F. Supp. 2d at 669. But the Criminal Acts Exclusion applies to injuries "arising out of a criminal act committed by or at the direction of the insured." J.A. 73.

In the context of homeowner's insurance, the Circuit Court of Warren County, Virginia has observed that an injury arises out of an event "when there is apparent to the rational mind upon consideration of all of the circumstances, a causal connection between" the event and the injury. Erie Ins. Exch. v. Young, 69 Va. Cir. 34, 41 (2005) (internal quotation marks omitted). Notably, The Supreme Court of Virginia has quoted

29

this definition of "arising out of" "many times with approval" Lucas v. Lucas, 186 S.E.2d 63, 64 (Va. 1972) (internal quotation marks omitted). Against this backdrop, we conclude that the criminal acts exclusion applies for two reasons. First, the Jenkins Complaint clearly and unambiguously alleges that Appellee and its agents committed criminal acts – namely, kidnapping and conspiracy to commit racketeering, which is a federal crime pursuant to 18 U.S.C. § 1962(d). The Jenkins Complaint also specifically alleges Appellee's role in these crimes. For example, the Jenkins Complaint contends that Staver used Liberty University's phone lines to speak with Philip Zodhiates after Zodhiates deposited Miller and the child near the Canadian border and that other Liberty University employees assisted Miller while she was in Nicaragua. Second, the Jenkins Complaint unambiguously claims that Appellee is liable for injuries arising from those criminal acts. With respect to the kidnapping claim, the Jenkins Complaint asserts that Jenkins and the child suffered injuries as a result of the kidnapping. J.A. 52. The Jenkins Complaint also alleges injuries as a "direct and proximate result of Defendants' [RICO] violation." Id. at 51. These statements allege a causal connection between Appellee's alleged criminal acts and the claimed injuries.

Therefore, Appellant has no duty to defend pursuant to CGL Coverage B.

30

## SELL Coverage

The district court concluded that the SELL's Intentional and Criminal Acts Exclusion did not apply because "the Jenkins Complaint insufficiently implicated Liberty in . . . excluded conduct because it insufficiently alleged direct or vicarious liability and facts to support those links." Liberty, 16 F. Supp. 3d at 673. However, the Intentional and Criminal Acts Exclusion embraces claims "arising out of any intentional, dishonest, fraudulent, criminal, or malicious act or omission or any willful violation of law by the insured" and "precludes coverage for all insured persons under the policy regardless whether the person seeking coverage participated in any way in the intentional or criminal acts or omissions." J.A. 116. As we have emphasized, the Jenkins Complaint alleges Appellee's liability for injuries arising from its direct involvement in conspiracies to commit kidnapping and racketeering, which carry criminal penalties. We conclude these claims clearly and unambiguously trigger the Intentional and Criminal Acts Exclusion.[7]

---

[7] Appellee argues that the Criminal Acts Exclusion and the definition of "personal and advertising injury" are in conflict, which is impermissible under Virginia law because an insurer cannot "'give coverage with the right hand and then take away with the left.'" Appellee's Resp. Br. 40 (alteration omitted) (Continued)

IV.

For the foregoing reasons, we hold that Appellant had no duty to defend Appellee against the Jenkins Complaint. We therefore reverse the district court's grant of summary judgment, vacate its award of fees and costs, and remand for further proceedings.

VACATED AND REMANDED

---

(quoting Fuisz, 61 F.3d at 243). Appellee's argument relies on the definition a "personal and advertising injury" as one arising out of seven enumerated "offenses." J.A. 81 (emphasis supplied). Appellee equates "offenses" with "crimes." But that reading of "offense" is not supported by the policy. The examples of "offenses" it provides are noncriminal acts -- torts and copyright offenses. Therefore, read together, there is no conflict between the policy's definition of "personal and advertising injury" and the Criminal Acts Exclusion.

32